Guynn et al. vs. McCauley et al.

---

## GUYNN ET AL. VS. MCCAULEY ET AL.

1. ———: *Jurisdiction of Probate Court over estate of minors.*
   The Probate Court has no jurisdiction to authorize a father to sell the land of his minor child, until he is appointed guardian. The appointment of a guardian is the first step in the jurisdiction of the court, but is not complete until his bond as guardian is filed.

2. PLEADING: *Denials, how made.*
   A general denial of the allegations of a complaint, is not sufficient. Denials must be specific, of each material allegation, or of any knowledge or information of the fact alleged, sufficient to form a belief of its truth.

3. ————: *Statute of frauds.*
   One cannot avail himself of the statute of frauds, at the hearing, unless he has plead it.

4. SPECIFIC PERFORMANCE: *Voluntary agreement.*
   Chancery will not decree specific performance of a mere voluntary agreement. But when a donee enters into possession and makes improvements on the land, the money thus expended on the faith of the gift, is a consideration on which to ground a claim for specific performance.

5. *Sale by guardian; when complete.*
   A sale by a guardian under an order of the Probate Court, is a judicial sale, and not complete until reported to and confirmed by the court.

6. LIMITATIONS: *Statute of.*
   The statute of limitation of five years, applicable to judicial sales, saves to minors and persons of unsound mind the period of three years after the disability is removed.

| 32 | 97 |
|----|-----|
| 59 | 366 |
| 32 | 97 |
| 62 | 194 |
| 62 | 214 |
| 32 | 97 |
| 69 | 605 |
| 32 | 97 |
| 74 | 87 |
| 32 | 97 |
| 82 | 45 |
| 32 | 97 |
| | 394 |

7.  TAX PURCHASE: *By one holding under color of title, when void.*

A party in possession of land under color of title, who receives the rents and profits, more than the taxes assessed upon it, permits it to be sold for the taxes, and to be purchased by his agent, and takes from him a transfer of the certificate of purchase after he is. reimbursed by accruing rents, and then procures the tax deed upon the certificate, for the purpose of strengthening his title, acquires no title by said purchase.

APPEAL from *White* Circuit Court in Chancery.

Hon. JOHN WHYTOCK, Circuit Judge.

*Pomeroy,* for appellants.

*Turner* and *Moore, contra.*

ENGLISH, CH. J.:

This suit was commenced the 22d March, 1869, on the Chancery side of the Circuit Court of White County, by James A. McCauley and wife, Nannie A. (formerly Bond), and James R. Bond.

In the original bill, Andrew B. Guynn, who claimed title to the lots in the Town of Searcy, which are the subject of litigation, was made defendant.

By an amended bill, Pitchigrew T. Quarles and wife, Emily S., and Wm. G. Turner, representing (as alleged) the estate of James Walker, deceased, under whom plaintiffs claimed the lots, and Robert J. Rogers, a tenant of Guynn's, were made defendants.

The object of the original bill was to set aside a sale of the lots made to Guynn by John W. Bond, as guardian of plaintiffs, James R. Bond and his sister, Mrs. McCauley, etc.

The amended bill was framed with the double purpose of setting aside the sale, and establishing the legal title to the lots in the plaintiffs as against the defendants representing the estate of James Walker, etc.

The cause was heard on the 6th of February, 1874, on the pleadings and evidence, and final decree rendered in favor of the plaintiffs in accordance with the prayer of the amended bill.

Guynn and his tenant, Rogers, obtained the allowance of an appeal from the decree, November 3d, 1874. None of the other defendants appealed.

It is probable that the judge of the court below (Whytock), treated the order of sale, procured, or attempted to be procured, by John W. Bond, as guardian, etc., from the Probate Court of White County, as null and void, because made during the civil war, inasmuch as the decree styles the court that made the decree "a Confederate Probate Court."

It seems the order of sale was made 3d of March, 1863, when the war was flagrant, but the order was not on that account void. See *Berry, adm'x. et al.* v. *Bellows, adm'r.*, 30 Ark., 198, where this subject was fully discussed.

I. We will first enquire whether the probate order of sale, and the conveyance to appellant, Guynn, made by the guardian under the order, can be treated as valid in this suit, and as vesting in Guynn any title to the lots in controversy.

The amended bill, after stating the facts relating to the title of plaintiffs, alleges, in substance, that about the 2d March, 1863, John W. Bond, the father of said James R. and Nannie A., filed a petition in the Probate Court of White County, praying to be appointed their guardian, and for authority to sell the lots in controversy—Lots Nos. 1, 2, 11 and 12, in Block 11, in the Town of Searcy. Whereupon it was ordered that said petition be granted.

That said petition was not verified by the affidavit of any one, and did not disclose any sufficient reason for such sale, nor was any reason shown by the testimony of any witness.

That said plaintiffs were then both over the age of fourteen years, but this fact was not disclosed in the petition, and they had no notice of said proceedings, and no opportunity to oppose them, or to select their own guardian.

· That no bond as guardian was ever filed by said John W. Bond, no legal entry made of his appointment as such guardian, and that he was never legally appointed guardian, etc. ·

That said John W., without other authority than as above shown, did, on the 18th July, 1863, in pursuance of a contract entered into previous to said probate proceedings, by deed of that date, convey, as such pretended guardian, said lots *one* and *two* (and others not in controversy), to one Nathaniel M. Mulhollan. ·

That afterwards, on the 5th of October, 1865, Mulhollan, by deed of release and quit claim of that date, reconveyed to said John W. all his right, title and claim to said lots, etc.

That on the 24th December, 1866, said John W. Bond, by deed of that date, conveyed all of the lots in controversy to defendant Guynn, who had ever since had possession of them by himself or tenants.

A transcript of the proceedings in the Probate Court and copies of the above deeds, are made exhibits.

It is also alleged that John W. Bond sold the lots for Confederate money, and that none of the proceeds of sale ever came to the hands of plaintiffs, or to the hands of any person for them, either before or since their arrival at the age of majority.

That the sale of the lots made by their pretended guardian was never reported to the Probate Court, nor by it approved.

The petition of John W. Bond to be appointed guardian, etc., as it appears in the transcript exhibited with the bill, is addressed to the Hon. Milton Sanders, Judge of the Probate Court of White County; and states in substance and effect, that in the

Guynn et al. vs. McCauley et al.

year 1849, James Walker, late of said county, gave to the two children of said petitioner, Nannie A. and James R. Bond, Lots Nos. 1, 2, 11 and 12, in Block 11, in the Town of Searcy; whereupon the petitioner made various and valuable improvements upon the lots. That in consequence of his leaving the Town of Searcy, and from the condition of the improvements alluded to, they would soon begin to decay, and ultimately become valueless. He therefore prays the Probate Judge to appoint him guardian for the said children, and give him, by an order of the court, authority to sell and dispose of said lots to the best interests of his said children.

It seems the petition was filed 2d March, 1863, but it does not appear to have been sworn to.

The order of the Probate Court made upon the petition, as it appears in the transcript exhibited with the bill, is as follows:

"John W. Bond, Guardian :

"Comes John W. Bond, guardian of Nannie A. and James R. Bond, and presents his petition to the court, which petition is in the words and figures as follows, to-wit:" (Here the petition is copied.)

"After a careful examination, and on due deliberation had in the premises, it is hereby ordered and decreed by the court that petition be granted said guardian."

It seems that this order was made on the 3d of March, 1863.

The deed from John W. Bond to Mulhollan dated 18th July, 1863, recites an order of the Probate Court authorizing him, as guardian of his minor children, Nannie A. and James R., to sell the lots therein described, and proceeds to convey to Mulhollan in his capacity as such guardian, for the consideration of $1000, Lots Nos. 1, 2, 3, 4, 5, 6, 7 and 8, in Block 11, Moore's Addition to the Town of Searcy.

The deed of Mulhollan back to Bond, dated 5th October, 1865, for the consideration of $1, remises, releases, etc., to Bond all the right, title, claims, etc., vested in Mulhollan by Bond's deed of 18th July, 1863.

The deed of Bond to Guynn, dated 24th December, 1866, recites an order of the Probate Court, authorizing Bond, as guardian, etc., to sell Lots Nos. 1, 2, 11 and 12, in Block 11, etc., as the property of his children and wards, Nannie A. and James R.; the sale and conveyance by Bond, as guardian, under the order of court, to Mulhollan, 18th July, 1863; the deed of release and quit claim made by Mulhollan to Bond, 5th October, 1865; and then Bond proceeds, in his own capacity as such guardian, to convey said lots to Guynn for the consideration of $1.

Guynn, in his answer, in effect, admits the application of Bond to be appointed guardian, etc., the order of the Probate Court made thereupon, etc., and that the transcript of the record, etc., exhibited with the bill, contains substantial copies of the petition, order, etc.  He admits also the execution of the several deeds set out in the bill, and made exhibits.

He does not aver, nor is it in any way shown, that any other fact appears of record in the Probate Court in relation to the appointment of Bond as guardian, or the sale of the lots by him, than such as are shown in the transcript from the record exhibited with the bill.

Can the order of sale, and the sale and conveyances made under it, upon the facts disclosed in the record before us, be treated as valid in this proceeding?

By the Constitution in force at the time the order in question was made, it was provided that the Probate Court should have such jurisdiction in matters relating to the estates of deceased persons, executors, administrators and guardians, as might be prescribed by law, etc.

The statutes in force at the time the order was made in rela-
tion to the appointment, qualification, etc., of guardians for
minors, are contained in Gould's Digest, chap. 81.

The Probate Courts were empowered to appoint guardians for
minors, etc., sec. 1.

Sec. 5 declares that : "The father shall be the natural guardian
of his child, and shall have the care of his person and education,
but in no case shall he have the care and management of his
estate, unless he be appointed by the court for that purpose, when
he shall give bond and security in the same manner as other
guardians."

By sec. 10, every person appointed guardian, is required, at
the term of the court at which he may be appointed, to enter
into bond, with security, to his ward, in a penal sum to be de-
termined by the court, and the condition of the bond is
prescribed.

By section 11, the bond must be filed in the office of the clerk
of the court, and a copy is made evidence.

By sec. 12, " No entry of the appointment of a guardian shall
be made, until bond and security be given, and the same be ap-
proved by the court."

By sec. 28, " No person shall have any right or authority over
the property of a minor, unless he shall have been appointed by
the court, etc."

By act, 23d December, 1846, the Probate Courts were em-
powered to grant orders to guardians to sell real estate of their
wards.    This act is embraced in secs. 180 and 181, chap. 4,
Gould's Digest, p. 131.

"Sec. 180.   The Probate Court shall have power, upon the
proper affidavit being filed, as hereinafter provided for, to grant
orders to executors, administrators and guardians, to sell any, or
all real estate belonging to an estate not otherwise provided for.

"Sec. 181. The executor, administrator or guardian, who may make application for the sale of real estate, shall first make affidavit that the said real estate cannot, under present circumstances, be available to the estate, and that said estate will be benefitted by said sale, showing the reason why; and shall present the affidavit of some disinterested person of known good character, verifying the same fact set forth in his or their affidavit; whereupon, the court may grant an order for the sale of said real estate, which sale shall be conducted as the court may direct, and upon terms approved by the court."

The father of the minors had no right to sell their real estate until he was duly appointed their guardian, and obtained an order of the court authorizing him to make the sale.

The Probate Court had no jurisdiction to grant the father an order to sell the lots of his minor children, until he was duly appointed their guardian. The first step in the actual jurisdiction of the court over the estate of the minors, was the appointment of their guardian. *Sturdy and wife, et al.* v. *Jacoway*, 19 Ark., 515. The appointment was not complete until the applicant entered into bond. The statute declares that no entry of the appointment of a guardian shall be made until bond and security be given, etc.

The transcript of the record of the Probate Court exhibited with the bill, shows that the father applied to be appointed guardian of his two minor children, etc., the petition is copied in the entry, and it is then stated that the petition was granted by the court. There is no indication in this record entry that the applicant gave any bond, nor is it otherwise shown. On the contrary, it is averred in the bill that he gave no bond, and this allegation is not specifically denied by the answer of defendant Guynn.

Under the Code practice every material allegation of the complaint not specifically controverted by the answer, is taken to be true. Gantt's Digest, sec. 4608.

It is true that in the beginning of the answer of Guynn, he states that he "denies each charge and allegation in said complaint contained, except as hereinafter specifically admitted, explained or qualified."

The answer must contain a denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof, sufficient to form a belief. Gantt's Digest, secs. 4569, 4608.

A material allegation in a pleading, is one essential to the claim or defense, and which could not be stricken from the pleading without leaving it insufficient. Ib. sec. 469. A general denial of the allegations of the bill is not sufficient.

To prevent a material allegation of the bill from being taken as true, it must be specifically denied by the answer, or the defendant must state that he has not sufficient knowledge or information in regard to the fact alleged to form a belief as to whether it is true or not true. Newman Plead. and Prac., 509, 515.

The next step required to empower the Probate Court to make an order authorizing the guardian to sell real estate of his ward, is for the guardian to make and present the affidavit, and the supporting affidavit of some other person, as prescribed by the statute above copied.

There is no indication in the transcript of the record of the Probate Court made an exhibit to the bill, that any such affidavit, by the guardian or any other person, was presented with the application for the order of sale, and it seems that the petition, which is copied in the entry, was not sworn to.

Indeed it is inferable from the terms of the entry, that the court acted upon the petition alone, supported by no affidavit.

The bill alleges that the petition was not verified by the affidavit of any one, nor the testimony of any witness taken, and

these allegations are not denied by the answer of Guynn, otherwise than in the general mode above indicated.

When an application is made by a guardian for an order to sell the real estate of his ward, and the affidavits required by the statute are presented, the court may grant an order for the sale, which sale is to be conducted as the court may direct, and upon terms approved by the court. Such is, in effect, the language of the statute.

In this case Bond presented his petition for the double purpose of being appointed guardian for his two minor children, and for an order to sell their real estate. And the court simply ordered that "the petition be granted," making no directions whatever as to the manner or terms of sale.

The order was made, it seems, on the 3d of March, 1863. On the 18th July following, Bond sold and conveyed to Mulhollan two of said lots named in his petition, and others not named, for $1000, in Confederate money it is alleged and not denied.

On the 5th of October, 1865, Mulhollan reconveyed the lots to him, by quit claim deed; and on the 24th December, 1866, more than three years after the Probate Court made the order of sale, he conveyed to Guynn the four lots named in the petition for $1.

It is alleged in the bill, and not denied in the answer of Guynn, otherwise than as above indicated, that the sale was not reported to the Probate Court, nor approved by it.

It is also alleged in the bill, and not directly denied by the answer, that appellees received none of the proceeds of the sale.

A sale made by a guardian, under an order of the Probate Court, is a judicial sale, and not complete until reported to and confirmed by the court. Rorer on Judicial Sales, p. 3–10, and cases cited.

In *Sturdy and wife, et al.* v. *Jacoway*, 19 Ark., 499, the leading case on the subject of sales of real estate under orders of the Probate Court, the substance of the ruling is, that the order of the Probate Court for the sale of the real estate of a deceased person, is a judgment *in rem*; and, being the judgment of a court of competent jurisdiction, upon a subject within the scope of its legitimate powers, imports a necessity for the sale, and cannot be attacked and held for naught collaterally upon the ground that the court erroneously exercised its powers; nor can the proceedings and sale, under such judgment or order, when reported to and confirmed by the Probate Court, be impeached collaterally; nor the title called in question for any omission in obtaining the order of sale, or other irregularity.

The case was ejectment by the heirs .of the deceased owner of the land against the purchaser at the administrator's sale, made under order of the Probate Court, who relied upon the order of sale and the admistrator's deed for title.

The sale seems to have been made under the statute above copied, and all of the material facts requisite to give the Probate Court actual jurisdiction over the land, and to make the order of sale, ·were made to appear.

There was an administrator; he made application for the order of sale, by sworn petition supported by the affidavit of another person; the court ordered the sale, and directed its mode and terms, and the sale was reported to the court, and approved by it. There were errors in the proceedings, which might have been reviewed on appeal, etc., but they were not such as to make the sale void.

In *Fleming* v. *Johnson et al.*, 26 Ark., 421, the ruling in *Sturdy and wife et al.* v. *Jacoway*, was followed.

That case involved the validity of a guardian's sale made under an order of the Probate Court. The order was made

under the same statute which we are considering. A subsequent guardian brought ejectment for the land against the person who purchased from the first guardian under the order of sale. The court directed the guardian to sell at private sale, for not less than a sum fixed in the order. The sale was made, reported and confirmed by the court. There were errors in the proceedings, but this court held that the material jurisdictional facts appeared by the record of the Probate Court, that irregularities in the sale were cured by its confirmation, and that the sale was valid.

The appointment of the guardian who made the sale was questioned, but held to be legal; and the record entry of the order of sale showed that he presented his petition for the order, verified by affidavit, etc.

So in *Montgomery and wife* v. *Johnson et al.*, 31 Ark., 74, the material jurisdictional facts appeared, and the sale was reported to and confirmed by the Probate Court.

In this case it appears that the guardian gave no bond, and hence he was not legally appointed; that his petition for the order of sale was not verified by any affidavit; that the court gave no direction as to the mode or terms of sale; that he sold two of the lots described in his petition, and six others, not embraced in the petition, for $1000 in Confederate money; that all of these lots were afterwards reconveyed to him by quit claim deed, and that after the lapse of three years from the date of the order of sale, he conveyed the four lots embraced in the order to appellant Guynn for a nominal sum; that the sale was not reported to the Probate Court, nor confirmed by it, and that his wards received none of the proceeds of the sale.

Upon all these facts, taken together, we do not see how a Court of Chancery can treat the sale as valid, in a proceeding like this to set it aside.

II. Appellant Guynn, admits in his answer, that Bond, as guardian, etc., by deed bearing date 24th December, 1866, conveyed the lots in controversy to him, and that he took possession of them under and by virtue of said deed, and has since held possession of them by his tenant Rogers, and he pleads and relies upon the statute of limitations of five years' applicable to judicial sales.

Though the sale was not confirmed by the Probate Court, it is probable that an adverse holding under the deed of the guardian for the full period of limitation, might be a bar to the recovery of the lots. *Gowan* v. *Jones*, 10 Sm. and Mar., 164.

But the statute of five years applicable to judicial sales, (Gantt's Digest, sec. 4116), saves to minor and persons of unsound mind the period of three years after such disability shall have been removed.

It is stated in the bill, that James R. Bond was not over one year and Nannie A. not over three years of age, in the year 1849, when James Walker gave them the lots in controversy, and there is in the transcript a written admission by the counsel of appellants that their ages are correctly stated in the bill.

Neither of them had been of age, therefore, as long as three years when the suit was commenced (March 22d, 1869), nor had five years transpired from the date of the deed under which Guynn took possession of the lots.

III. Guynn also sets up in his answer, and relies for title upon a tax sale and deed.

In his answer he states, in substance, that after he took possession of the lots in controversy, and after the claim of the plaintiffs had been spoken of, he, having become bankrupt, failed to pay the taxes assessed upon the lots for the year 1868, and they were returned by the Collector of White County delinquent; and afterwards duly advertised by him for sale for taxes

charged upon them for that year, and the penalty and costs, and were sold therefor on the 2d of August, 1869, and bid off by John A. Cole for the sum of $24.66, who paid his bid, and received from the Collector a certificate of purchase. That on the 15th of August, 1871, defendant becoming able to do so, purchased the lots of Cole for the sum of $50, and that Cole assigned to him, in consideration thereof, said certificate of purchase; and that on the 19th of February, 1872, he presented the certificate to the Clerk of White County, and he executed to him a tax deed for the lots, which is made an exhibit to his answer; whereby he claims to be the rightful owner of the lots, and entitled to the rents and profits thereof.

The tax deed recites that the lots were assessed in the name of Guynn for the year 1868, and sold upon his failure to pay the taxes, etc.

On this branch of the case two depositions were taken.

B. D. Turner deposed that he was present at the tax sale, and when Cole made his bid, he announced that he had bid for Guynn, and no one bid against him. That within a year after the sale, he called on Cole, who was clerk of the county, and, as agent and attorney of plaintiffs, offered to redeem the lots, but Cole refused to permit the redemption, on the ground that plaintiffs had no such title as would authorize them to redeem, etc.

John A. Cole deposed that he was Guynn's agent in the year 1869; and that he turned over the rents collected from the lots in controversy for that year to the attorneys of Guynn in payment of their fees. That at the time of the tax sale, he had no money of Guynn's in his hands, out of which to pay the taxes on the lots; and bought the lots at the sale in his own name. That after the expiration of two years from the sale, still remaining the agent of Guynn, and having come into possession of money of his sufficient to reimburse himself for the taxes, he transferred

to him on the 15th August, 1871, the certificate of purchase for the exact amount he had originally paid out for the lots; and on the 19th February, 1872, being county clerk, he executed to him a tax deed upon the certificate, and delivered the deed, after recording it, to his attorneys.

On cross-examination, he deposed that he had been Guynn's agent for renting the lots, and other property, collecting the rents, and paying his taxes ever since the year 1868. That about the beginning of the year 1869, he rented the lots for that year at $125; for the year 1870, at $100; for the 1871, at $150, and for the year 1872, at $150, but allowed $50 for repairs. Out of the rents he had paid the taxes, and about $80 for repairs on the premises. He transferred the certificate of purchase to Guynn, instead of marking the lots redeemed, for the purpose of strengthening his title, etc.

The lots were sold for taxes after this suit was commenced, but Guynn did not file his answer until after he obtained the tax deed.

He was, by his agent, in possession of the lots, under color of title, and receiving the rents and profits, which were more than sufficient to pay the taxes assessed upon the property. It is manifest that he permitted the lots to be sold for taxes, purchased by his agent, Cole, and obtained from him a transfer of the certificate of purchase, after he had been re-imbursed, by the collection of rents, the money paid upon his bid, and procured from him the tax deed for the purpose of strengthening his title to the lots. Under such circumstances, he acquired no valid title to the lots by the tax deed. *Pleasant et. al.* v. *Scott et al.*, 21 Ark., 370; *Jacks* v. *Dyer et al.*, 31 Ib., 344: *Frierson, ex'r, et al.* v. *Branch, ex'r.*, 30 Ib., 464; *Pettus & Glenn* v. *Wallace et al.*, 29 Ib., 476.

IV. Appellant, Guynn, also relies upon the defense of innocent purchaser, etc.

In his answer he states that he purchased the lots in good faith for a valuable consideration, which was all paid, believing that Bond and Mulhollan were legally authorized to sell and convey the same, and without any knowledge or suspicion that the title to the lots was claimed to be imperfect, or of any illegality in the transaction, or any fraud upon the rights of plaintiffs, etc.

He avers that the re-conveyance by Mulhollan to Bond was without consideration, and made by the former for the purpose of avoiding the making of a deed directly to him. That Mulhollan was in truth and in fact his vendor, and received the purchase money of him for the lots.

In his deposition, he states that he purchased the property in controversy from Mulhollan in 1865, for which he paid him about $1500 in cotton then in Memphis; and at the time of said purchase, and until after the payment of the whole of the purchase money, he had no notice of plaintiffs' claim to said property. That when the conveyance was to be made, Mulhollan conveyed back to Bond, from whom he had purchased, and Bond executed a deed to him.

The deed of Bond to Mulhollan embraced but two of the lots in controversy, as we have above seen, and was made by him in his capacity as guardian.

So the deed of Bond to Guynn was made by the former in his capacity as guardian, for a nominal consideration and without warranty of title.

The rule *caveat emptor* applies to judicial sales. Guynn in accepting a deed from one claiming to sell and convey as guardian, was obliged to enquire, and he had the means of ascertaining, by what authority he acted, and he took the conveyance at his peril. Rorer on Judicial sales, sec. 450;

Guynn et al. vs. McCauley et al.

*Worthington adm'r.* v. *McRoberts et al.,* 9 Ala., 297; *Bingham et al.* v. *Maxcy,* 15 Ill., 295

V. The counsel for appellants submit that appellees must recover upon the strength of their own title, and that they have failed to show in themselves any such title as a Court of Equity will enforce.

In the amended bill, the title of the plaintiffs is stated in substance as follows:

About the year 1849, James Walker, since deceased, who was the owner in fee of the four lots in controversy, feeling greatly attached to plaintiffs, James R. and Nannie A., who were the children of his son-in-law John W. Bond, (whose former wife was a daughter of said James Walker) and regarding said plaintiffs in the light of his own grand children, in consideration of his love and affection for them, verbally gave them said lots. At the time of said gift said plaintiffs were very young, James R. not over one year, and Nannie A. about three years of age. In pursuance and completion of said gift, said donor delivered said lots to them or to their father for them, and put them in possession thereof; and their father for them erected a valuable residence and other tenements and improvements thereon, and he and plaintiffs resided together on the lots from thence until about the month of January, 1856, when they let them to a tenant, and moved to another place, but continuously from the time of taking possession in 1849, to the 11th day of July 1863, they had actual possession of said lots, occupying them themselves, or by tenants.

James Walker died in January, 1852, having executed no deed to plaintiffs for the lots, leaving him surviving his widow, Mary Walker, a son, John M. Walker, a daughter, Mary Walker, who had intermarried with one Alexander Walker, and a grand daughter, Emily S. Walker, the daughter of his deceased son, Crawford Walker, as his only heirs and distributees; and leaving

8

also a will by which (with the exception of three tracts of land which he directed his executors to sell) he devised to his said widow his entire real estate during her life, and in the event of her death before the arrival of his son John M. Walker to the age of twenty-one years, said real estate was to be equally divided, on his arrival to said age, between him and his said sister Mary Walker and her bodily heirs; and in the event of the death of said John M. Walker without bodily heirs, his entire interest in said estate to descend to said Mary Walker and her bodily heirs.

The widow of the testator died before the death of John W. Walker, and he died without bodily heirs before attaining the age of twenty-one years. Afterwards Alexander Walker died, and his widow, Mary Walker, about December, 1856, intermarried with one Thomas Watkins; and afterwards, on the ——day of———1857, they (Watkins and wife) to perfect said gift of James Walker, executed to said plaintiffs a deed for said lots. After this Mary Watkins died, leaving two children, Alexander Walker, a son by her former husband, and Mary I. Watkins, a daughter by Thomas Watkins. Afterwards, on the ——day of———1858, both of said children died, said Alexander dying first.

About the ——day of———1857 or 1858, said Emily S. Walker intermarried with Pichegru T. Quarles.

In the year 1854 or 1855, said Emily S. by her guardian instituted suit in the Circuit Court of White County, against Alexander Walker and his wife Mary Walker, for one half of the personal and real estate of said James Walker, deceased, and upon their death, and the death of said children of said Mary, said controversy being still unsettled, and said Thomas Watkins claiming the interest which had descended to his said child Mary Jane, he and said Quarles and wife agreed to compromise and did compromise said controversy as to the real estate,

by joining in a conveyance, by which they conveyed to one William G. Turner in trust, all the real estate which was owned by and belonged to said James Walker, at the time of his death, to be, by said Trustee, sold and conveyed, to whomsoever said parties, Watkins and Quarles and wife, should in writing request, and the proceeds of such sale to be divided so as to give one half to said Watkins and the other half to said Quarles and wife.

That the legal title to the lots in controversy was in James Walker at the time of his death, and by the conveyance last above mentioned, was vested for at least the undivided half, if not for the whole of the lots, in said Turner, as trustee.

That said Emily S., while sole did not, nor have she and her husband since her marriage, executed any deed to plaintiffs for said lots, but refuse to do so, or to authorize said Turner so to do.

The bill then proceeds to state the application of John W. Bond to the Probate Court to be appointed gaurdian of the said plaintiffs, etc., the order of the court, and the conveyances made by him, etc., as above shown, and concludes with a prayer that the deed to Guynn be set aside and canceled, and that all the right, title and claim of the defendants, and each of them, in and to the lots be divested out of them, and vested in plaintiffs, and that they have possession, rents, etc.

Quarles and wife did not answer the bill.

William G. Turner answered, admitting the allegations of the bill to be true, stating that he had no interest in the lots except such as was vested in him as trustee, by virtue of the deed mentioned in the bill as executed to him by Watkins, Quarles and wife, and professing willingness to release and convey any interest or title held by him to whomsoever the court might direct.

Guynn et al. vs. McCauley et al.

By the manner in which Guynn answered the allegations of the bill, as above indicated, he, in effect, admitted them be true, and failing to plead the statute of frauds, he could not avail himself of it as a defense at the hearing.    *Wynn* v. *Garland,* 19 Ark., 34.

But had he pleaded the statute of frauds, it would have availed him nothing upon the facts alleged in the bill; for although a Court of Chancery will not decree the specific performance of a mere voluntary agreement, yet, where a donee enters into possession of land under a parol gift, and makes valuable improvement on the land on the faith of the gift it constitutes a consideration on which to ground a claim for specific performance. *Kings heirs* v. *Thompson and wife,* 9 Peters, 204;    *Haines et al* v. *Haines et al.,* 4 Maryland Ch., 133 ;    *Shepherd* v. *Berin et al.,* 9 Gill, 32.

We do not deem it necessary to decide whether Guynn having accepted a deed from Bond as guardian of appellees (James R. and Annie A.,) and gone into possession of the lots under it, could be heard to question their title or not.

It may be a hardship for Guynn to lose the lots after paying Mulhollan a fair price for them, but he should have required him to perfect his title, and make him a good deed before parting with his cotton.    In permitting Mulhollan to quit-claim to Bond and accepting a deed from him as guardiam, without warranty, he acted at his peril.    He does not occupy the attitude of an innocent purchaser as against appellees, as we have shown.

The decree is affirmed.