No. 2999.

## J. H. BALLEW *v.* THE STATE.

26  483
38  650

1. PERMITTING CARDS TO BE PLAYED, ETC.—INDICTMENT charged that the appellant did unlawfully permit "a game of cards to be played upon his premises, the said premises then and there being appurtenances to a public place, to wit, a house for retailing spirituous liquors." *Held*, sufficient to charge the offense defined by article 365 of the Penal Code.

2. SAME—THE JURISDICTION OF THE COUNTY COURT is concurrent with that of the justices' courts over misdemeanors cognizable in the justices' courts, and the offense defined by article 365 of the Penal Code comes within this category.

3. SAME—FACT CASE—TERM DEFINED—An "appurtenant" is not a portion of the principal thing, but is something belonging or pertaining to something else which is its principal. The proof in this case showing that the game of cards was played in a part of the saloon, and not in an apputenant thereto, as charged, and failing to establish the ownership of the premises as alleged, will not support this conviction.

APPEAL from the District Court of Smith. Tried below before the Hon. B. B. Beaird, County Judge.

The appellant in this case was convicted for permitting a game of cards to be played upon his premises, which were charged to be appurtenant to a drinking saloon. The penalty imposed upon the appellant was a fine of twenty-five dollars.

Alexander White was the first witness for the State. He testified, in substance, that he lived in Tyler, Smith county, Texas, but was in Troupe, Smith county, on a certain day in July, 1888, when a game of cards was played in the rear room of an establishment known to the witness as John Ballew's saloon. Whisky and other intoxicating beverages were sold in the bar

room of that establishment. The witness went into the house at a front door, where there was a barber shop. Thence he went into another room, and thence into the bar, and out of it, down a hall, into the room in which the cards were played. Other parties reached the last mentioned room through windows; which windows opened into the main room. Witness saw defendant in the gaming room while the cards were being played, and saw him in the bar room serving drinks to customers. The witness had often conversed with defendant but had no recollection of ever hearing him say anything about his saloon. "Seven up" and poker were the games played on the occasion referred to by witness. The games were played for money represented by checks. Mr. Copeland appeared to be cashier. He sold and redeemed the checks. The defendant took no part in the games so far as the witness knew, but was in the room once or twice, looking on. Drinks from the bar room were served in the gaming room, and paid for by checks to Mr. Copeland. Witness had seen Copeland behind the bar in the saloon, but did not know what his business was.

Wess Lambkin testified, for the State, that he was one of the parties who participated in the games of cards mentioned by the witness Alex White. The said games were played in a room at the rear end of a drinking establishment which witness had heard called by some people "Ballew's saloon," and by others "Copeland's saloon." He had seen many other parties about the said saloon, and was unable to say whether or not the defendant was the Ballew who was the reputed owner of the saloon.

J. C. Cornelison testified, for the State, that the town of Troupe contained two drinking saloons. One of them was in the charge of the witness. He did not know who owned the other one, but had seen defendant and Copeland, Nunn and Gillespie tending the bar at that saloon at different times.

M. O. Meador testified that he had seen whisky barrels marked with the initials "J. H. B." in the drinking establishment known as Ballew's saloon. J. H. B. were the initials of the defendant. He had seen other barrels and boxes in that saloon marked "B. & C." Witness had often seen the defendant and Copeland and Nunn behind the said bar, serving drinks to customers. He did not know who owned the said saloon, nor did he know that the initials on the barrels referred to the defendant.

The State next introduced in evidence a deed executed by

Hyman Blum, conveying to J. H. Ballew and B. F. Copeland lot number twenty-one of block number four, in the town of Troupe, Smith county, Texas. The State attempted but failed to prove that the saloon mentioned in the indictment was located on the lot conveyed by the deed.

The tax collector of Smith county testified, for the State, that he issued an occupation tax to J. H. Ballew as a retail liquor dealer in Troupe, to run from January 1, 1887, to January 1, 1888. It was afterwards transferred to Ballew & Copeland.

*Woldert & Johnson*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant was indicted under article 365, Penal Code, for unlawfully permitting "a game of cards to be played upon his premises, the said premises then and there being appurtenances to a public place, to wit, to a house for retailing spirituous liquors." The indictment was good and sufficient under the statutes. (Penal Code, arts. 355, 365; Willson's Crim. Forms, No. 247, and authorities cited in the note.)

It is contended that the county court had no jurisdiction of the case, because the fine affixed to said offense is not less than twenty-five nor more than one hundred dollars, and that the same came exclusively within the jurisdiction of the justice's court. County courts have concurrent jurisdiction with justices' courts of misdemeanors cognizable in justices' courts. (Willson's Crim. Stats., sec. 1541; Solon v. The State, 5 Texas Ct. App., 301; Chaplin v. The State, 7 Texas Ct. App., 87; Galloway v. The State, 23 Texas Ct. App., 398.)

But we are of opinion that the evidence does not support the allegation that the premises were appurtenances to a public place. The room in which the playing was done was not an appurtenance, but was a part of the liquor saloon itself. (Stebbins v. The State, 22 Texas Ct. App., 32.) An appurtenant is not a portion of the principal thing; it is something belonging to, pertaining to, something else which is its principal. "The thing appurtenant must be of an inferior nature to the thing to which it is appurtenant." (1 Bouv. Law Dic., "Appurtenant;" 2 Blackst. Comm., 19.)

Again, we are of opinion that the evidence is insufficient to establish that the premises belonged to or were the property of the defendant Ballew. The judgment is reversed and the cause remanded.

*Reversed and remanded.*