BENNETT *v.* WEIS.

4-6941                                              168 S. W. 2d 379

Opinion delivered February 1, 1943.

*John C. Sheffield,* for appellant.

*W. W. Sharp,* for appellee.

GRIFFIN SMITH, C. J. Weis, doing business at Wheatley, is a wholesale dealer in oils, gasoline, and other merchandise. Thompson, a citizen of Texas, contracted with Howard, also of Texas, to prospect for oil on Thompson's lease in Lee county. Bennett owned a drilling rig and authorized Howard to use it. Thompson's agreement was to pay Howard a specified sum for drilling to a stipulated depth. Thompson also supplied three hundred feet of eight- and ten-inch surface pipe.

Howard engaged orally to maintain the equipment and to pay Bennett half of any net profits that might accrue, all expenses to be borne by Howard. An eighty-eight-foot steel derrick owned by United States Oil Company was loaned to Howard.

It is stipulated that Bennett assisted in drilling the well, but Weis did not inform him of claims for merchandise sold on Howard's requisitions. The account amounted to $2,113.97, of which $1,113.97 was not paid.[1]

Responsive to prayer of Weis' complaint, a lien was declared on the lease and well; also on Thompson's pipe, Bennett's machinery, and upon U. S. Oil Company's derrick. It was thought authority for the decree was to be found in Act 615, approved March 23, 1923.[2]

The statute [3] provides that "Any . . . materialman, artisan, laborer or mechanic, who shall under a contract, express or implied, . . . made with the . . .

[1] Warning order was published as to Howard and Thompson. An injunction to prevent removal of the property was asked. Bennett answered. In a cross complaint he alleged a contract to drill in Phillips County. Delay, he said, would result in damages of $5,000. Thompson filed a plea in bar, denying jurisdiction of the court to render a personal judgment against him. United States Oil Company intervened, claiming ownership of the steel derrick, "reinforced with four-inch legs." [The derrick had been used in the adjoining county of St. Francis.]

[2] Pope's Digest, § 8905.

[3] The Act applies to ". . . any person, corporation, firm, association, partnership, materialman, artisan, laborer, or mechanic."

200

lessee of any land, . . . perform labor or furnish fuel, material, machinery, or supplies, used in the digging . . . [of] any . . . oil or gas well, . . . . shall have a lien on the whole of such land or leasehold interest therein, or oil pipe line, . . . including the buildings and appurtenances, and upon the materials and supplies so furnished, and upon said oil well . . . for which same are furnished, and upon all the other oil wells, . . . buildings and appurtenances, including pipe line, leasehold interest, and land used in operating for oil, . . . for which said material and supplies were furnished . . . whether the same are movable or not."[4]

Act 615 does not (other than as to supplies sold) expressly authorize a lien upon machinery used in drilling, or upon a derrick. If the right exists it is comprehended in the word "appurtenance."[5]

Our statute, in the main, seems to have been borrowed from a Texas Act of 1917.[6] It was construed in *Williams et al.* v. *Magouirk*, 235 S. W. 640. The opinion was by the court of civil appeals, Dallas. A laborer's lien was sought to be enforced. That part of the statute quoted by the court is printed in the margin.[7] It was held that the lien did not include the property contended for because terms of the Act embraced only ". . . ma-

---

[4] Act 513, approved March 21, 1923, (Pope's Digest, § 8916) authorizes a lien in favor of laborers engaged in drilling or operating an oil or gas well, etc., and is not involved in this appeal. [The citation in Pope's Digest is 9816, which is a typographical error.]

[5] Certain express liens are authorized, but they are not an issue here.

[6] Vernon's Annotated [Civil] Statutes, 1925 Revision, v. 16, article 5473.

[7] "Any person . . . who shall, under contract, express or implied, with the owner of any land, . . . or the owner of any gas, oil or mineral leasehold interest in land, . . . or with the . . . agent . . of any such owner, perform labor or furnish material, machinery or supplies, used in the digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, . . . shall have a lien on the whole of such land or leasehold interest therein . . . or lease for oil or gas purposes, the buildings and appurtenances, and upon the materials and supplies so furnished, and upon said oil well . . . for which same are furnished, and upon all of the other oil wells . . . buildings and appurtenances, including . . . leasehold interest and land used in operating for oil . . . upon such leasehold or land . . . for which said material and supplies were furnished or labor performed.

terial, machinery, or supplies to such material, machinery, or supplies furnished by the laborer or mechanic and used in the digging, drilling, torpedoing, operating, completing, maintaining, or repairing any such oil or gas well.''

It was then said that there was no proof that any of the materials, machinery, or supplies described in appellee's petition were furnished by appellee for use in digging and repairing an oil or gas well owned by appellants, ''. . . or that the same were so furnished for the purpose of being so used.''

Appellee in the Magouirk case contended that notwithstanding he did not furnish any of the material, machinery, or supplies, still he was entitled to a lien on all of the property ''. . . because same constitutes 'appurtenances' for the purpose of drilling an oil well.''

There was no contention by the appellee that actual drilling commenced, ''. . . but that only such preparations to begin . . . were made as the material and supplies furnished would permit.''

The court then held that the Act provided for a lien on appurtenances, but the term ''appurtenances'' did not include material, machinery, and the supplies identified.[8]

In *Wagner Supply Co.* v. *Bateman,* (1929) 118 Tex. 498, 18 S. W. 2d 1052, the Texas Supreme Court held that a chattel mortgage was superior to Bateman's claim

[8] "The opinion rendered in Shrader v. Gardner, 70 W. Va. 780, 74 S. E. 990, 40 L. R. A. (N. S.) 1145, defines an 'appurtenance' as a thing belonging to and going with the transfer of a principal thing, used with, and dependent upon, the thing, and essential to it. And in the case of Whittelsey v. Porter, 82 Conn. 95, 72 Atl. 593, it was held the word 'appurtenance' means attached to or belonging to, and in law the term 'appurtenance' usually means something appertaining to another thing as principal, and passing as an incident to such principal. Now to what thing as principal can it be said that the materials, machinery, and supplies described in appellee's petition appertain or is an incident to such principal thing? It cannot be said that they are an incident to a well that was intended to be drilled, or an incident to a leasehold interest that has ceased to exist, and on which leasehold interest, if same existed at the time suit was filed, appellee did not assert or seek to foreclose lien provided for by the provisions of said act.

"In the case of Bloom v. West, 3 Colo. App. 212, 32 Pac. 846, it was held: 'Technically, property tangible and corporeal, capable of sale or transfer, and of use in any other place cannot be regarded as appurtenant to land.' See Ballew v. State, 26 Tex. App. 483, 9 S. W. 765; Johnson v. Nasworthy, 4 Wilson Civil Cas., (App.) 16 S. W. 758; Balcar v. Lee County Cotton Oil Co., 193 S. W. 1094."

of a mechanic's lien on well ·casing or other materials which became a part of the property used in drilling and operating an oil well. In reaching that conclusion the court said it did not think the material became a part of the realty or of the lease or well, ''. . . or appurtenant thereto, under circumstances which defeat the mortgage lien.''

Other Texas cases are to the effect that machinery and equipment used in drilling are not appurtenances.[9]

. . .

Where another state has legislated in respect of a subject and the supreme court of that state has construed the law, a presumption arises that another state in enacting the statute also adopts the court's construction. *McNutt* v. *McNutt,* 78 Ark. 346, 95 S. W. 778.[10]

The Texas Supreme Court had not, when our statute was enacted in 1923, construed the Act of 1917. It had, however, been passed upon by the Court of ·Civil Appeals, Dallas. There was a very definite holding that machinery, such as Weis contends for in the instant appeal, was not an appurtenance. The decision seems to rest upon the proposition that ·the *res* on which it was sought to impress the lien was not attached to the land or the lease.

Our statute, by its terms, gives materialmen and laborers a lien (a) on the land or lease; (b) on oil pipe lines; (c) on buildings and appurtenances; (d) on materials and supplies furnished by the seller; (e) on all other wells, buildings, appurtenances, etc.

The only theory upon which Bennett could be held liable is that he and Howard had pooled their interests —that is, Bennett supplied the machinery; Howard (through Thompson) furnished expense money and 300 feet of surface pipe; the U. S. Oil Company (through Howard) furnished the derrick. Then, as the stipulation expresses the relationship, ''. . . Bennett assisted in

---

[9] Woods v. Lanier, Tex. ·Civ. App., 66 ,S. W. 2d 360; Calatex Oil & Gas Co. v. Smith, 144 So. 243, 175 La. 678; Denny v. White House Lumber Co., Tex.· Civ. App., 150 S. W. 2d 296.

[10] See West's Digest of Arkansas Decisions, "Statutes," § 226, p. 103.

drilling the well.'' In the meantime Bennett and Howard had agreed that half of the net profits should go to Bennett. In effect, by this arrangement, Bennett became the equitable owner of fifty percent of the interest Howard had in the lease. What Howard's interest was is not disclosed, the stipulation being that the lease belonged to Thompson. Still, as between Bennett and Howard, there was an understanding as to beneficial interests. With such benefits as an objective, Bennett placed his machinery on the lease in which he had become interested. Weis supplied oil, gas, and other materials on Howard's requisition, but ultimate profits, if any, were divisible, with Bennett and Howard as beneficiaries. For the purpose of drilling the well and effectuating the general purpose, Howard was Bennett's agent; but this would not sustain the lien.

It is difficult to draw a distinction between the machinery and the derrick, although some of the judges think such a distinction existed insofar as the record is concerned because of failure to show that the derrick was only temporarily attached to the soil. All agree that the statute gives a lien on the pipe. Some of the judges think the Texas decisions are not controlling, and that machinery, derrick, and pipe were appurtenances.

The judgment is reversed and the cause is remanded with directions to dismiss as to U. S. Oil Company, to release Bennett's machinery, but to sustain the lien as to the surface pipe and lease.