Sain *v.* R. Abramson Company.

4-9358                                     236 S. W. 2d 585

Opinion delivered February 19, 1951.

*Ted McCastlain* and *Fletcher Long,* for appellant.

*Jno. B. Moore, Jr.,* for appellee.

George Rose Smith, J.   This is an action brought by the appellants, E. B. Sain and J. B. Sain, Jr., to impress a lien upon twenty-seven bales of cotton which they picked in 1949 with a mechanical cotton picker. The cotton was grown by J. B. Sain, Sr., as a tenant upon lands owned by the appellee partnership.   There was evidence that the partnership had rented the land to Sain, Sr., upon the understanding that his brother and son, the plaintiffs, would pick the cotton at maturity without charge.   The complaint was dismissed by the trial court, and this appeal followed.   E. B. Sain died while the appeal was pending, and the cause has been duly revived.

Ralph Abramson, manager of the partnership, testified that he rented the land to Sain, Sr., upon the latter's

assurance that his son and brother owned a cotton picker and would gather the crop without charge. After the crop was picked and ginned the partnership applied the amount due the tenant, being $1,282.53, upon an indebtedness carried over from preceding years. Sain, Sr., admits the existence of this debt but denies having told Abramson that his brother and son would pick the cotton for nothing.

Neither of the plaintiffs was present when the rental contract was made in the spring, and both disclaimed knowledge of any understanding that they were not to be paid for their services. According to the appellants, in the fall they agreed with Sain, Sr., to pick the cotton at the prevailing market price, which amounted to $1,079.62 for the twenty-seven bales. It took them four days to pick the cotton with the mechanical picker, a machine for which they had paid $8,200. Their employee, Curtis Stokes, operated the picker part of the time at wages of $10 a day, and the plaintiffs operated it themselves the rest of the time. When the landlord refused to pay for their work they brought this suit to enforce a lien.

It is argued that the plaintiffs, owing to their close relationship to Sain, Sr., were estopped to make a charge for their services. The appellees have failed to show, however, that either of the plaintiffs knew that the partnership expected them to pick the cotton as a favor to Sain, Sr., and in these circumstances the evidence is insufficient to make out an estoppel. Nevertheless the decree must be affirmed, with a slight modification, upon another ground. For their lien the appellants rely upon Ark. Stats. 1947, §§ 51-301 and 51-317, giving laborers a lien upon the production of their work. Under these statutes the appellants have no lien for the services of Curtis Stokes, for the lien is given to the one who performs the labor and not to one who hires labor performed and pays for it. *Valley Pine Lbr. Co. v. Hodgens*, 80 Ark. 516, 97 S. W. 682.

Nor have the appellants a lien for the charges while the owners were operating the picker themselves. We

have held that the statute must be strictly construed, that the claimant must bring himself strictly within its terms, and that "the plaintiff must perform manual labor." *Flournoy* v. *Shelton & Co.*, 43 Ark. 168. This does not mean that the laborer must work with his bare hands alone; he is within the statute even though he uses simple tools that are merely incidental to his labor. In a borderline case, *Klondike Lbr. Co.* v. *Williams*, 71 Ark. 334, 75 S. W. 854, the Act was held to apply to one who used a wagon and team in his work; but that is as far as the cases have gone. Indeed, the *Klondike* case was explained in *St. L., I. M. & S. Ry. Co.* v. *Love*, 74 Ark. 528, 86 S. W. 395, where we said: "That decision proceeds correctly upon the theory that the use of the team or tools by the laborer in his work enters into and becomes a part of his own labor."

It is evident that the use of the plaintiffs' cotton picker did not enter into or become a part of their labor. The values are far too disproportionate for the machine to be subordinated to the labor of its operator. Under their contract the Sains were to receive more than $250 a day for gathering the crop, but the operator of the machine was paid only $10 a day. The primary commodity sold by the Sains was not manual labor but mechanical performance.

Cases arising under the various artisan's and mechanic's lien statutes are readily distinguishable. Those statutes, such as the one applicable to automobile repairmen, contemplate skilled work that is ordinarily performed with elaborate costly equipment. The need for those laws lay in the fact that such artisans were not covered by statutes designed to protect manual labor alone. If the owners of mechanical cotton pickers are to have a lien for their charges they too must seek additional legislation.

A majority of the court are of the opinion that the Sains were entitled to a lien for their own labor in operating the cotton picker and hauling the crop to the gin. The evidence indicates that they worked four days each and that $10 a day is reasonable compensation for this

labor. The decree is therefore modified to provide a judgment and lien for $40 for each of the Sains' services, and the cause is remanded for the enforcement of these liens, if necessary.