SUPERIOR OIL COMPANY v. ETHERIDGE.

4-9553                                                    242 S. W. 2d 718

Opinion delivered July 9, 1951.

Rehearing denied October 22, 1951.

*Davis & Allen* and *H. W. Varner,* for appellant.

*Y. W. Etheridge,* for appellee.

ED. F. McFADDIN, Justice. The trial court awarded appellee a lien under Act 615 of 1923 (now found in § 51-701, *et seq.,* Ark. Stats.); and appellant challenges the correctness of the said judgment.

The appellant, Superior Oil Company (hereinafter called "Superior"), was the owner of certain oil and gas leases in Ashley County, and made a "letter agreement" with Claud R. McSpadden. Superior addressed a letter to McSpadden reading in part:

"The Superior Oil Company agrees that, in the event of complete performance as hereinafter provided of the following conditions, it will assign to you without warranty of any kind, express or implied, all its right, title and interest, . . . in and to the following oil and gas leases: (The letter contains a description of leases.)

"The conditions of which prior complete performance upon your part is required are:

"1. You must on or before August 1, 1949,[1] commence operations for the drilling of an oil well upon some

---

[1] By subsequent exchange of letters, this date was changed to August 21, 1949, and other provisions added to this Paragraph No. 1.

part of the above described leases at a location to be selected by you and thereafter diligently and in good faith continuously prosecute the drilling of said well to a depth sufficient to satisfactorily test, in the opinion of this company, the Cotton Valley sand, from which production is presently being obtained in the No. 1 well drilled by this company upon said premises, unless at a lesser depth oil is discovered and produced from said well in paying quantities."

In numbered Paragraphs 2 to 9, inclusive, Superior required of McSpadden, *inter alia*: that representatives of Superior should have access at all times to the drill site, the log, the core record and the drill samples; that surface casing would be set; that all formations would be tested when Superior's geologist so indicated; that Superior would be duly notified in advance of such testings; and that daily progress reports would be made to Superior. The letter continued:

"This agreement may not be recorded or assigned by you or by you made the subject of any lien or contract either voluntarily or involuntarily without the written consent of this company first had and obtained and any action in violation of any of the provisions of this act shall cause all of your rights hereunder to terminate without notice.

"If this agreement meets with your understanding and approval, kindly execute the duplicate copy hereof in the space provided thereon and return to us within ten (10) days; otherwise this agreement shall be of no force and effect.

"Yours very truly,

"THE SUPERIOR OIL COMPANY."

In the space provided in the said letter, McSpadden signed the following worded statement:

"The undersigned hereby acknowledges his understanding and approval of the foregoing letter agreement

and agrees to be bound by the covenants, terms and conditions thereof.

"EXECUTED this 14 day of June, A. D. 1949.

"/s/ Claud R. McSpadden."

McSpadden began performance of the agreement, and made a contract with appellee, Etheridge, whereby the latter furnished the lumber and labor and constructed a plank road from the railroad terminus to the location of the drilling site and also furnished timbers which were placed around the pump location. Etheridge's account was $6,656.32; and when it remained unpaid, he filed action on December 16, 1949, against McSpadden and other named parties, "and the unknown owners of oil wells in sections 11 and 12, township 19 south, range 10 west, in Ashley County, Arkansas, known as Bradley No. 1 and Claud R. McSpadden No. 3." The prayer of the complaint was:

"WHEREFORE, he prays judgment against the defendants, separately and severally, in the sum of $6,656.32, for a lien on said property as authorized by sections 51-701 *et seq.* of the Statutes of Arkansas, 1947, and for attachment of the premises and property of the defendants as set out in this complaint and in affidavit for attachment filed herein, and for such other and further general and special relief as may be justified herein."

The leasehold and property thereon were seized by order of attachment; and on March 21, 1950, Etheridge obtained judgment awarding him a lien, sustaining the attachment, and ordering the leasehold and property sold to satisfy his claim. Thereupon, on March 30, 1950, Superior intervened, saying:

"Intervener claims ownership of the property involved in this cause and Intervener alleges that Claud R. McSpadden, a Defendant in said cause, has no right, title or interest in any of the property so ordered sold. . . . This Intervener has heretofore stored upon the property described above approximately 6,200 feet of oil well cas-

ing. Said casing was purchased by Intervener in the regular course of business and was transported to and stored upon the property described above for its own use. . . . Intervener alleges that it is in no wise responsible or obligated to pay to the Plaintiff any part of the obligations, if any, incurred by the Defendant Claud R. McSpadden, and that no part of its property is subject to the claims or liens of any person as security for any such indebtedness incurred by Defendant Claud R. McSpadden.''

Etheridge replied to this intervention:

''That from the statements made by intervener herein, it should be made a party defendant and the original pleadings filed herein against other defendants should be made applicable to it as such defendant.''

The prayer of the reply was in accordance with the above quoted language. At the trial on July 27, 1950, Superior exhibited its ''letter agreement'' with McSpadden and also an instrument from him dated May 1, 1950, entitled ''Acknowledgment of Forfeiture and Release,'' in which McSpadden stated that he had not performed the conditions stated in the ''letter agreement'' with Superior, and therefore released Superior from any liability to him because of said ''letter agreement.'' Etheridge proved his unpaid account for $6,656.32 for materials, etc., as aforesaid. The Circuit Court denied Superior's intervention; and from that judgment Superior brings this appeal, presenting the questions now to be discussed.

I. Superior says:

''Inasmuch as there was no denial by Etheridge of any of the facts alleged by Superior in its verified Intervention, the Circuit Court should have entered an order or judgment protecting the rights of intervener, by sustaining the prayer of Intervener.''

In support of its contention, Superior cites § 31-157, and § 27-1121, Ark. Stats., and also the following cases: *Guynn v. McCauley,* 32 Ark. 97; *DeLoach Mill Mfg. Co. v. Little Rock Mill,* 65 Ark. 467, 47 S. W. 118; and *Rosewater v. Schwab Clothing Co.,* 58 Ark. 446, 25 S. W. 73.

We hold against Superior on this contention, because in Etheridge's reply to Superior's intervention there was the language previously copied, to-wit:·

"That from the statements made by intervener herein, it should be made a party defendant and the original pleadings filed herein against other defendants should be made applicable to it as such defendant."

When we consider (a) that the case, as originally styled, showed that Etheridge attempted to bring in "the unknown owners" of the oil wells, and that (b) Superior had bound McSpadden not to record the "letter agreement," it is clear that the effect of the quoted language in Etheridge's reply was that Etheridge claimed he was entitled to a lien against Superior and its property, under § 51-701, just as he had prayed in his original pleading against McSpadden. Etheridge's reply thus amounted to more than a denial of Superior's intervention: it was a cross complaint against Superior.

II. Superior says:

"Plaintiff Was Entitled To No Lien Upon the Leasehold Involved, and Equipment Thereon, Under § 51-701, Arkansas Statutes."

This brings us to the real controversy in the case—i. e., whether Etheridge is entitled to a lien under Act 615 of 1923.[2] Section 51-701, Ark. Stats., contains germane language:

"Any person . . . who shall under contract express or implied . . . with the owner . . . of any . . . mineral leasehold interest in land . . . or with the . . . *agent* . . . *of any such owner* . . . furnish . . . machinery or supplies used in . . . operating, completing, equipping . . . or repairing such well . . . shall have a lien . . . upon the whole of such . . . leasehold interest . . . and upon all . . . buildings and appurte-

---

[2] We are not considering Etheridge's claim to a lien for labor under Act 513 of 1923 (now found in § 51-320, Ark. Stats.), because there is no evidence as to labor that Etheridge personally performed, as distinct from the labor that he hired. See *Sain* v. *R. Abramson Co.,* 218 Ark. 415, 236 S. W. 2d 585.

nances, including pipeline . . . for which said materials and supplies were furnished . . ." (Italics supplied.)

In the light of the contractural relations between Superior and McSpadden, it is possible that McSpadden was an "agent" of Superior within the purview of the above quoted Statute, to the extent of the enforcement of the lien herein involved. But our decision need not be put on that ground, because Etheridge is clearly entitled to a lien under § 51-703, Ark. Stats., the germane language of which reads:

"Any person . . . who shall furnish . . . . . . materials or supplies to a *contractor* . . . shall have a lien upon . . . the leasehold interest . . . or the lease for oil or gas purposes, the buildings and appurtenances, and . . . oil or gas pipeline . . . in the same manner and to the same extent as the original *contractor* for the amount due him for the material furnished . . ." (Italics supplied.)

In *Home Oil Co.* v. *Helton,* 179 Ark. 132, 14 S. W. 2d 549, we had under consideration the definition of a "contractor" under our mechanics' lien statute, and we said:

"The term 'contractor,' as used in our statute relating to mechanics' lien, refers to one who, under a contract with the owner, agrees for a consideration to furnish the material, labor, and superintendence necessary to the erection of the building or other improvement on the owner's premises . . . The word 'contractor' as used in the statute means a person engaged in making a contract with the owner for the improvement of certain real estate."

Superior was the "owner" of the oil and gas leasehold and made an agreement, with McSpadden looking toward the "improvement" of the leasehold estate, so McSpadden was a "contractor."[3]

The "letter agreement" between Superior and McSpadden, and his work thereunder, made McSpadden a "contractor" for the drilling of the well; and under

---

[3] In *Arkansas State Licensing Board* v. *Lane,* 214 Ark. 312, 215 S. W. 2d 707, we again defined the word, "contractor."

§ 51-703, Ark. Stats., Etheridge, in furnishing materials to McSpadden, became entitled to a lien, just the same as a contractor would have been entitled to one under § 51-701. In other words, we construe the concluding language of § 51-703 (*i. e.*, "in the same manner and to the same extent as the original contractor") to mean that a supplier of materials to a contractor, under § 51-703, has a lien just as a contractor has a lien under § 51-701.[4]

Superior says that the "letter agreement" between it and McSpadden was unilateral and therefore McSpadden was not a contractor. Assuming, without deciding, that the original agreement might have been unilateral, nevertheless, McSpadden actually performed work and labor under the "letter agreement," and such performance made him a contractor, irrespective of what might have been the original status. See *Mid-Continent* v. *Russell,* 173 Fed. 2d 620.

Superior claims that *Roberts* v. *Tice,* 198 Ark. 397, 129 S. W. 2d 258, 122 A. L. R. 1177, supports Superior in its contention; but that case is factually different from the one at bar. In *Roberts* v. *Tice* (*supra*) the holder of the overriding royalty had assigned the leases to a company which undertook to drill, and we held that such reserved overriding royalty was not subject to lien under § 51-701, *et seq.*, Ark. Stats. But in the case at bar Superior, *as the leaseholder,* made the contract with McSpadden to drill and agreed to pay him in leases and oil as a "turnkey contract";[5] so McSpadden was a contractor for Superior, and Superior does not occupy the position of a holder of an overriding royalty.

The case at bar has aspects like that of *Bennett* v. *Weis,* 205 Ark. 198, 168 S. W. 2d 379. In that case Thompson owned oil and gas leases and made a contract with Howard to drill a well and furnish Howard 300 feet of

[4] In reaching our conclusion, we have carefully considered the case of *Brooks* v. *Superior Oil Co.,* 96 Fed. Supp. (Advance Sheets) 641.

[5] In *Continental Oil Co.* v. *Jones,* 177 Fed. 2d 508, the Circuit Court of Appeals said: "A turnkey contract has a definite meaning in the oil industry. It is a contract where the driller undertakes to furnish everything, and to do all the work required to complete the well, place it on production, and turn it over ready to 'turn the key' and start the oil running into the tanks."

surface pipe. Bennett let Howard have a drilling rig; and the question was as to the extent of the lien of the material supplier, Weis. We held that Weis had no lien on Bennett's rig; but we sustained the lien of Weis, the supplier, "as to the surface pipe and the lease." In short, we held that the lease and pipe of Thompson, the leaseholder, were subject to the lien of the supplier. Under the authority of that case the pipe on the drill site[6] and also the lease of Superior (the leaseholder in the case at bar) were properly subjected to the lien of Etheridge.

Affirmed.

Robinson, J., dissents.

---

[6] When we say "pipe on the drill site," we do not refer to some casing that was never unloaded on the drill site. Pipe in transit and never on the drill site was not subject to the lien; but discussion of this becomes an immaterial matter because Superior executed a forthcoming bond when it intervened and also a supersedeas bond when it appealed; and the affirmance of Etheridge's lien—which we now do—as to the leasehold and pipe on the drilling site accompliance an affirmance within the provisions of the said bonds.