## DENNY et al. v. WHITE HOUSE LUMBER CO. et al. *
### No. 3461.

Court of Civil Appeals of Texas. Amarillo.

Jan. 21, 1931.

Rehearing Denied Feb. 18, 1931.

Will Crow, of Canadian, for appellants.

Hoover, Hoover & Cussen, of Canadian, for appellees.

JACKSON, J.

The plaintiffs, the White House Lumber Company, the Gibson Supply Company, both of which are corporations, and H. E. Hoover, instituted this suit in the district court of Ochiltree county, Tex.,. against the defendants Chas. Denny, Jr., and J. W. Denny, to recover certain personal property.

The plaintiffs alleged that about September 6, 1927, they were the owners and in possession of certain personal property, which they describe as one complete standard drilling rig, 250 feet of 5½" casing, 640 feet of 12½" casing, 3 joints of 12½" casing, 4 joints of 10" casing, one steel tank, one wood tank, 2,060 feet of 10" casing, one six h. p. pumping engine, 2,500 feet of 2" pipe, 600 feet of one-inch pipe, and galvanized boiler housing. They itemize the value of each article, the aggregate of which is the sum of $11,850. The location of the property is alleged to be on section 471, block 43, H. & T. C. Ry. Co. land in Ochiltree county, Tex.

That on or about September 6, 1927, the defendants, without the consent of the plaintiffs or either of them, wrongfully took possession of said property and converted it to their own use and removed a portion of it from its location in Ochiltree county. That though requested, the defendants have refused to deliver the property to the plaintiffs and unlawfully retain the same to plaintiffs' damage in the sum of $11,850.

The defendants answered by general demurrer, a plea of not guilty, and a general denial. They also alleged by way of special answer that they are the owners of the property and entitled to the possession thereof. That on July 3, 1926, they entered into a drilling contract with S. R. McCorkle, doing business as the McCorkle Pipe Line Company, by the terms of which the defendants were employed to drill a test well for oil and gas on said section 471. They sufficiently alleged the effect of the terms and provisions of the contract, a copy of which they attached to and made a part of their answer, and that such contract was duly recorded in Ochiltree county, Tex., on November 2, 1926.

That on November 22, 1926, they filed and had duly recorded in the county clerk's office of Ochiltree county, Tex., an itemized account of their claim, supported by affidavit showing that S. R. McCorkle was indebted to them for labor in the drilling of said test well in the sum of $8,760 and that all just and lawful offsets, payments, and credits on said indebtedness had been allowed.

That on the 11th day of October, 1927, the defendants filed suit in the district court of Ochiltree county, Tex., against S. R. McCorkle, et al., in which suit they recovered a judgment against the said McCorkle for their debt and a foreclosure of their contractor's

*Writ of error granted.

and laborer's lien on the property in controversy against the said McCorkle. That an order of sale was issued, and on January 3, 1928, the property in controversy, after due advertisement, was sold by the sheriff to satisfy said judgment and purchased by the defendants for the sum of $400 and conveyed to them by a bill of sale, duly executed by the sheriff of Ochiltree county. That by reason of said contract and the fixing of their lien by filing their itemized account for labor, supported by proper affidavit, and the judgment, the foreclosure of their lien, the sale by the sheriff and purchase at such sale, these defendants are the owners of and entitled to the possession of said property and have a superior right over any claim or interest of the plaintiffs therein.

They pleaded in the alternative that if it be determined that they are not the owners and entitled to the possession of the property involved in the controversy, that they have a judgment lien securing their indebtedness which is superior to any claim of plaintiffs and that such lien be foreclosed on the property against the plaintiffs; that the property be sold under execution to satisfy their indebtedness, etc.

The defendants also set up a cross-action against the plaintiffs, alleging that the sequestration obtained by the plaintiffs was wrongfully issued, and sued out without probable cause or justification by reason of which they have suffered actual damages which they set out in detail.

On September 5, 1929, the plaintiffs replied to the defendants' answer by supplemental petition consisting of general demurrer, numerous special exceptions, and a general denial.

In compliance with the peremptory instruction of the court, the jury found for the plaintiffs for the 2,060 feet of 10-inch casing. In response to special issues submitted by the court relative to the ownership of the other property in controversy, the jury found, in effect, that the plaintiffs were the owners thereof on September 26, 1927, and retained title thereto when such property was furnished and delivered by them to S. R. McCorkle.

On these findings the court rendered judgment that plaintiffs have and recover from the defendants the title to the property involved in the controversy and that the sheriff of the county, who was in possession thereof by virtue of the writ of sequestration which the plaintiffs had caused to be issued and levied, deliver possession of the property to the plaintiffs, from which judgment the defendants prosecute this appeal.

The appellants, by numerous assignments, present as error the action of the trial court in refusing to direct a verdict for them, in submitting any issue of fact to the jury, in peremptorily instructing the jury to return a verdict in favor of plaintiffs for the 2,060 feet of 10-inch casing, and in rendering judgment for the plaintiffs for the title and possession of the property on the findings of the jury; all of which assignments are based on the contention that the testimony is insufficient to support the verdict of the jury or to warrant the action of the court.

The record discloses that on July 3, 1926, the appellants entered into a written contract with S. R. McCorkle, by the terms of which they agreed to drill on said section 471 a test well in search of oil and gas, to a depth of 3,500 feet, unless oil or gas was found in paying quantities at a lesser depth, for a consideration of $5.50 per foot for the number of feet drilled; that 50 per cent. of the contract price earned was to be paid at the completion of each 500 feet and the remainder at the completion of the well. The contract contains numerous other provisions which we deem unnecessary to set out. This contract was filed for record on November 2, 1926.

On November 22, 1926, the appellants made and filed with the county clerk of Ochiltree county, Tex., an affidavit attempting to fix their laborer's lien on the property involved in this controversy, in which they state: "That the annexed account is a true and correct account of labor performed by them for S. R. McCorkle, sometimes doing business as McCorkle Pipe Line Co., of Hemphill County, Texas, and that the prices thereof are just and reasonable as set forth in said account; that save and except the credits indicated on said account, said account is past due and unpaid; that said labor was performed for the said S. R. McCorkle at the times in said account mentioned, under and by virtue of a contract between affiants and the said S. R. McCorkle; that due notice was given by affiants of labor performed as aforesaid, in accordance with law."

The affidavit then sets out that affiants were informed at the time of entering into the contract that S. R. McCorkle was the owner of certain leases on said section 471 and numerous other sections, which they describe, and continues: "That said labor was furnished and performed from July 8, 1926, up to and including the date hereof on a certain oil well located in the central part of Section No. 471." And that affiants are claiming a lien upon the leasehold interest of the said McCorkle in the lands described and on the personal property involved in this controversy, the description of which is given in the affidavit.

That the appellants filed suit in the district court of Ochiltree county, Tex., against S. R. McCorkle and the plaintiffs in this suit. That on November 3, 1927, they dismissed the plaintiffs from said suit and obtained judgment by default against S. R. McCorkle for the sum of $8,760 and a foreclosure of their

lien on the personal property described in this suit against S. R. McCorkle.

That on October 27, 1926, S. R. McCorkle sold and delivered to the plaintiffs all of the personal property involved in this controversy, except the 2,060 feet of 10-inch casing. That such sale is evidenced by a bill of sale of the same date. That by a written instrument, the date of which is not given, S. R. McCorkle acknowledges that he obtained, on August 26, 1926, from the Gibson Supply Company, one of the plaintiffs, the 2,060 feet of 10-inch casing and moved the same on to said section 471; that he had never paid therefor and never obtained title thereto and that said casing is and at all times had been the property of the Gibson Supply Company.

The affidavit filed by the appellants with the county clerk of Ochiltree county, Tex., for the purpose of fixing a laborer's lien, refers to "the annexed account," which the affidavit states is a true and correct account of the labor performed by them for McCorkle, that the prices therefor are just and reasonable, as shown by the account, that the account shows the credits it is entitled to, and that said account is due and unpaid and that the labor was performed at the times mentioned in said account. The affidavit also states: "That said labor was furnished and performed from July 8, 1926, up to and including the date hereof." The record fails to disclose that "the annexed account" was ever made or filed with the county clerk or introduced in evidence on the trial of this case. The appellants failed to state in the affidavit the depth the well had been drilled by them. In fact, it does not state that the well had been drilled to any depth. It does not disclose what sums had been paid them for work, nor with any certainty the specific time at which the work was done, nor the amount due them, nor when due.

■■■ The contract between appellants and S. R. McCorkle for the drilling of the well did not retain any lien on any property, and in order to fix the statutory lien, it was incumbent upon the appellants to comply with the statutes governing the fixing of liens. Mulloy et al. v. Humble Oil & Refining Co. (Tex. Civ. App.) 250 S. W. 792. This holding is approved by the Supreme Court in the case of Ball v. Davis, 118 Tex. 534, 18 S.W.(2d) 1063, 1064.

■ The appellants having failed to prepare and file "the annexed account" referred to in their affidavit, they failed to show the facts required by the statute which are necessary in order to establish a lien.

In construing the itemized and verified accounts relied on to fix a lien in the case of Ball v. Davis, supra, the Supreme Court, through Chief Justice Cureton, says:

"These accounts are clearly too indefinite to constitute compliance with the statute. The Morgan account, last quoted, covers 78 days' work over a period of 157 days, spread through or embraced in 6 different months; but no one can tell, either from the account or the affidavit which accompanies it, on what days the work was actually done, or any other fact or detail which would be of assistance in ascertaining the correctness of the account, or when any particular item thereof was due. The Davis account is equally as indefinite. In the first place, it begins with: 'To balance owing on August 27, 1926,' of $207. Neither the affidavit nor the account shows when the work was performed for which this balance was due, nor do they show when it became due. The remaining portion of the account purports to cover 170 (8) days' labor during 8 different months, embracing a period of 207 days; but there is nothing to indicate on what days the labor was performed, nor when any particular item of the account accrued or became due.

"The statute (article 5453) requires the account to be itemized. The term used means that the account must be set out by items. People v. Lowden, 285 Ill. 618, 121 N. E. 188. The sufficiency of the itemization must be determined, in view of the objects and purposes of the statute. The evident purpose of the statute here involved is to provide the owner of the property with such particulars as will enable him to ascertain whether or not the account is correct, and show the facts necessary to the establishment of a lien, not only for the benefit of the owner, but of third parties as well, who may be or might become interested or affected thereby. To accomplish these purposes the account must show the facts required by the statute to establish the lien. Unless the affidavit and account are sufficiently definite to show that labor has been performed, that a sum certain is due therefor, and the date when due, it is insufficient to accomplish the purpose of the statute to show and fix a lien.

"The general rule is that mechanic's lien statutes imposing involuntary liens upon the property of another must be complied with, at least in such a substantial manner as to convey notice to the debtor and third parties who might be interested or affected. 18 Ruling Case Law, p. 926, § 57; Ferguson v. Ashbell & Simpson, 53 Tex. 245. The text of Ruling Case Law reads as follows:

"'Mechanics' liens being purely statutory, there is no intendment in their favor, and they must show upon their face all the statutory requisites to their validity. They are incipient or inchoate until completed or perfected by compliance with the statute, and are lost utterly if those acts required for their completion be not done in the manner and within the time required by statute. In many cases it is said that a strict compliance with the statute must be shown, but this doubtless means that all the statutory steps must be taken, and that the notice or state-

ment of the lien shall contain all the averments required by the statute.'

"In the case of Ferguson v. Ashbell, just cited, this court said:

" 'In verbal contracts, however, the terms and specifications of the contract and the amount and value of the work and materials furnished, are made ex parte, and should be so specific and certain as to advise the owner of the property, other lien creditors, if any, and all persons interested, of the particulars of the demand sought to be enforced, so that if they desire, they may be prepared to contest the same.'

"We conclude that the accounts of both Davis and Morgan were too indefinite to fix or establish a mechanic's or laborer's lien on the property involved in this litigation. Authorities supra; McClellan v. Haley (Tex. Com. App.) 250 S. W. 413, 415; Banner Oil & Gas Co. v. Gordon (Tex. Civ. App.) 235 S. W. 945."

According to the undisputed evidence revealed by this record and the law as announced by the Supreme Court, the appellants did not acquire a lien as laborers or contractors on the property involved, because no itemized account was filed, the amount of the indebtedness claimed is not shown, the prices for the work are not given, the depth drilled is not revealed, the payments and credits made for the work do not appear and no data furnished by which it could be ascertained that the amount claimed is correct, and the statutory requirements of an affidavit and account for the purpose of establishing the lien are not complied with, and the affidavit and contract filed, in the absence of an account, is therefore too indefinite to fix a lien on the property involved in this litigation.

Before the filing of the contract and affidavit or institution of the suit against McCorkle by the appellants and the obtaining of a judgment by them against him, the property involved in this controversy was sold, delivered, and returned to the appellees. The sale of all of such property, except the 2,060 feet of 10-inch casing, as above noted, is evidenced by a bill of sale. The 2,060 feet of 10-inch casing not covered by the bill of sale was sold to S. R. McCorkle as a cash transaction, and no right or title thereto vested in him because he failed to pay therefor. Lang & Weinberger v. Rickmers & Wife, 70 Tex. 108, 7 S. W. 527. There is nothing disclosed in this record that would render the sale from S. R. McCorkle to appellees invalid or affect the title acquired from him by the appellees, because at the time the sale was made no lien existed in favor of appellants on said property, either under the statute or the judgment, and no lien against the appellees ever attached.

Appellants by numerous assignments challenge as error the action of the trial court in refusing to sustain their different motions to quash the sequestration proceedings instituted by the appellees and in overruling certain objections and exceptions made by them to testimony offered by the appellees; but in our view of the case these assignments become immaterial because appellants acquired no lien against the property, either by statute or judgment, that would affect the claim and rights of appellees. The testimony is uncontroverted that the appellees retained title to the property, which they furnished and delivered to S. R. McCorkle, the property involved in this controversy, until the consideration therefor was paid. The testimony tends to show that such consideration was never paid, and in our opinion the findings of the jury are supported by the testimony.

Finding no reversible error, the judgment is affirmed.