**DENNY et al. v. WHITE HOUSE LUMBER CO. et al.**

No. 1590—5964.

Commission of Appeals of Texas, Section A.
Nov. 9, 1932.

Will Crow, of Canadian, for plaintiffs in error.

Hoover, Hoover & Cussen, of Canadian, for defendants in error.

CRITZ, J.

This suit was instituted in the district court of Ochiltree county, Tex., by White House Lumber Company and Gibson Supply Company, both corporations, and one H. E. Hoover, against Charles Denny, Jr., and J. W. Denny, to recover the title and possession of certain alleged personal property. The property in question is described in the judgment of the district court as follows: "One standard drilling rig complete, 250 feet of 5½ in. casing, 640 feet of 12½ in. casing, 3 joints of 12½ in. casing, 4 joints of 80 ft—10 inch casing, 1—250 bbl steel tank, 1—250 bbl wood tank, 2,060 feet 10 inch casing, 1—6 horse power Novo pump and engine, 2,500 feet two inch pipe, 600 feet of 1 inch pipe, Galvanized boiler housing."

Trial in the district court with a jury resulted in a verdict and judgment for the plaintiffs, White House Lumber Company et al. On appeal by the Dennys, this judgment was affirmed by the Court of Civil Appeals. 40 S.W.(2d) 250. The Dennys bring error.

For convenience, we will hereafter refer to the parties as they appeared in the district court, to the White House Lumber Company et al. as plaintiffs, and to Charles and J. W. Denny as defendants.

It seems from the record before us that on the 3d day of July, 1926, one S. R. McCorkle, doing business under the name of McCorkle Pipe Line Company, and the defendants, entered into a written well-drilling contract, by the terms of which defendants agreed and bound themselves to drill a well in search of oil on section 471, in block 43, Houston & Texas Central Railway Company, Ochiltree county, Tex., to a depth of 3,500 feet, unless oil or gas was found at a lesser depth. The contract provided that defendants should receive the sum of $5.50 per foot for drilling such well, payable 50 per cent. on the completion of each 500 feet and the remainder on the completion of the well. The contract contained other provisions not necessary to mention here. We call attention, however, to the following clauses of said contract:

"First party, (McCorkle) has employed second parties (defendants) to drill a deep test well in search of oil and gas on the location hereinafter described as follows:" (Here follows description of land on which well is to be drilled.) * * *

"First party shall furnish the rig, the fuel, water and casing necessary for the drilling of said well, and compensate second party for drilling the well as follows:" (Here follows stipulations as to compensation.)

The above contract was filed for record in the office of the county clerk of Ochiltree county, Tex., on November 2, 1926, about four months, lacking three days, after its execution. Also the defendants filed an affidavit purporting to be in compliance with subdivision 2 of article 5453, R. C. S. 1925. We shall refer to these matters later.

It seems from the record before us that the property was sold to McCorkle by different ones of the above plaintiffs, and none of it was ever paid for by him. The 2,060 feet of 10-inch casing was sold to McCorkle by the plaintiff Gibson Supply Company as a cash transaction. McCorkle gave his check therefor at the time it was sold and delivered to him. The check was worthless and never paid.

Before the filing of the above contract and affidavit in the office of the county clerk, and before the defendants had obtained a judgment against McCorkle, which we will later discuss, McCorkle sold, delivered, and returned all of the above property to the plaintiff. The sale of the above property by McCorkle to the plaintiffs is evidenced by bill of sale duly executed, except the 2,060 feet of 10-inch casing. This property was returned because it was bought for cash and not paid for.

■ After the happening of the above events, that is, after the signing of the original contract between defendants and McCorkle, the filing of the same with affidavit in the office of the county clerk, the sale and delivery of the above property by McCorkle to the plaintiffs, and the return of the 2,060 feet of 10-inch casing, defendants sued McCorkle and these plaintiffs in the district court of Ochiltree county, Tex. In that suit we infer these defendants sought recovery as for debt against McCorkle under the above-mentioned well-drilling contract, and further sought a foreclosure of an asserted contractors' and laborers' lien on the property in question here, together with certain other properties not involved. The foreclosure was sought against all the defendants in that suit. The plaintiffs in this suit, who were defendants in that suit, were later dismissed therefrom, and judgment was finally entered for these defendants against McCorkle alone for their alleged debt, with foreclosure of their asserted lien on the properties above described. Later order of sale was issued on that judgment, and the property sold and bought in by the defendants. As already shown, these plaintiffs were dismissed from that suit, and are certainly not bound by that proceeding.

After the happening of the above events, this suit was filed by White House Lumber Company et al. against Charles and J. W. Denny to recover the above property which they seemed to have come into possession of by virtue of the proceedings in the suit against McCorkle.

Both plaintiffs and defendants claim the property in dispute here by virtue of the facts above detailed.

■ Defendants complain of the holding of the Court of Civil Appeals to the effect that McCorkle never became the owner of the 2,060 feet of 10-inch casing and therefore no lien ever attached in their favor thereon.

We sustain the holding of the Court of Civil Appeals as to such property. As already shown, the Gibson Supply Company sold this casing to McCorkle as a cash transaction. McCorkle gave his check therefor at the time it was purchased by and delivered to him. The check was worthless and never paid. Under such a record the title to this casing remained in the vendor, Gibson Supply Company, and never passed to McCorkle. Lang et al. v. Rickmers, 70 Tex. 108, 7 S. W. 527. This being the case, no lien could attach thereto in favor of defendants on a claim against McCorkle. This is in harmony with the holding of the Court of Civil Appeals, and disposes of the 2,060 feet of casing in question.

Defendants are claiming a lien on the property above described under chapter 3 of title 90, article 5473 et seq., R. C. S. 1925. It will be noted that the lien provided for in chapter 3, supra, in favor of contractors, laborers, etc., is, by express terms of article 5476, chapter 3, fixed and secured in the manner as provided for in article 5453, chapter 2, of title 90, supra. The portion of article 5453 which concerns us here reads as follows:

"The lien provided for in Article 5452 may be fixed and secured in the following manner:

"1. Every original contractor, within four months, and every journeyman, day laborer, or other person, within three months after the indebtedness accrues, shall file his contract in the office of the county clerk of the county where the property is situated to be recorded in a book kept by the county clerk for that purpose.

"2. If a journeyman, day laborer or other person has no written contract, it shall be sufficient to file an itemized account of the claim supported by affidavit showing that the account is just and correct and that all just and lawful offsets, payment and credits known to affiant have been allowed."

The above article contains a third subdivision, but it does not concern us in this case.

As shown by the statement we have made, the defendants filed their contract with McCorkle in the office of the county clerk of Ochiltree county within four months from the time it was made, and within four months from the time their indebtedness against McCorkle accrued. Also at the same time they filed an affidavit attempting to comply with the provisions of subdivision 2 of article 5453, supra. The Court of Civil Appeals holds that, since this affidavit was insufficient to meet the requirements of subdivision 2 of article 5453, no lien was ever fixed or secured in favor of defendants against McCorkle or the property here in dispute. It is evident from the statement contained in the opinion of the Court of Civil Appeals that the affidavit in question was in several particulars insufficient to fix or secure a lien under subdivision

2 of article 5453. In this respect the opinion of the Court of Civil Appeals is in absolute harmony with the opinion of the Supreme Court in the case of Ball v. Davis, 118 Tex. 534, 18 S.W.(2d) 1063.

It is contended by defendants that, even if it be admitted that the affidavit above discussed was insufficient to comply with subdivision 2, supra, nevertheless, they had a valid lien on the property in question by the filing of their contract at the time and in the manner above shown. In other words, defendants contend that under the provisions of subdivision 1 of article 5453, they fixed and secured their lien by filing the written contract between them and McCorkle, and that it was not necessary for them to make and file the affidavit provided by subdivision 2 of the same article.

A reading of the statute, article 5453, discloses that it provides that the lien created by article 5473 shall be fixed and secured:

(1) By filing the contract in the office of the county clerk of the county where the property is situated. This article requires the contract to be filed within four months by every original contractor, and within thirty days by every journeyman, day laborer, or other person, from the time the cause of action accrues. Subdivision 1 has been amended (Acts 1929, c. 478, § 1 (Vernon's Ann. Civ. St. art. 5453, subd. 1) so that three months is substituted for thirty days as contained in the codified article. This amendment does not affect this case.

(2) If there be no written contract, it is sufficient to file an itemized account of the claim supported by affidavit showing certain things.

■ The Court of Civil Appeals seems to hold that since the contract between the defendants and McCorkle contains no express lien it was necessary, in order to fix a lien under article 5453, to file an affidavit under subdivision 2 thereof. We disagree with this holding.

If subdivision 1 of article 5453 refers to contracts containing express liens, it is absolutely superfluous and accomplishes nothing. The very ability to contract has always given that right, and, where the lien is expressly given in the contract, it exists independently of the statute. It is therefore evident that under subdivision 1 of the statute the mere filing of the written contract is all that is necessary to fix and secure the lien created by article 5473. Of course in order to bind third parties under such a lien, the contract must be sufficiently definite to give notice as to the debt and lien sought to be fixed. In other words, it must identify the property, and the debt secured thereby, or contain sufficient information to put third parties on inquiry.

The above construction of subdivision 1, art. 5453, supra, is fortified and made certain by the very wording of subdivision 2 of the same article. The latter subdivision, by its very terms, limits its application to cases where the person seeking to fix or secure the lien "*has no written contract.*" (Italics ours.) In other words, subdivision 2 limits its application to oral contracts. It follows, therefore, that, if defendants in this case could not fix and secure their lien by filing their contract, then there was no way for them to do so. From what we have said, it is evident that we hold that the filing of the written contract between defendants and McCorkle was all that was necessary, as between him and them, to fix the lien created by article 5473. We therefore hold that, if such contract is sufficiently definite to put third parties on notice as to the debt and lien sought to be fixed and secured, then it is binding on these plaintiffs.

■ When we come to examine the contract, we find that it contains provisions which are sufficiently definite to identify the land on which the work was to be done, the price of the work, kind and character thereof, and the kind and character of machinery and other property required for its accomplishment. It therefore contains information as to where such property would be located in order to be used in the drilling of the well. We think all this was sufficient to put plaintiffs on inquiry and to charge them with the result of such inquiry had the contract been of record at the time they purchased the property in question. This brings us to a decision of the question as to whether plaintiffs are affected by a written contract filed for record after they purchased the property in dispute here.

With reference to the above, it is undisputed that the defendants filed their contract with McCorkle for record on November 2, 1926. It is also undisputed that the property in dispute here was sold to the plaintiffs by McCorkle on or about October 27, 1926. We think the record further shows that the plaintiff has no actual knowledge or notice as to who had drilled the well or anything else in regard to the contract between defendants and McCorkle at the time they purchased this property. We infer that the plaintiffs did know or were charged with knowledge that some one had done the work.

■ In the above state of the record the defendants contend that, when they filed their contract for record and thereby fixed and secured the lien created by article 5473, supra, same related back to the date of its inception, and plaintiffs were charged with notice thereof. We sustain this contention. Trammell v. Mount, 68 Tex. 210, 4 S. W. 377, 379, 2 Am. St. Rep. 479; Keating Imp., etc., v. Marshall Elec., etc., 74 Tex. 605, 12 S. W. 489.

We quote the following from the opinion

by Judge Willie in the Trammell Case, supra: "The lien of a mechanic, though not fixed before record of the contract or bill of particulars, when it is fixed, relates back to the time when the work was performed or the material furnished, and hence takes precedence of all claims to the property improved which have been fastened upon it since that time. This is the effect of the previous decisions of this court. Huck v. Gaylord, 50 Tex. 580; Fagan v. Ice Mach. Co., 65 Tex. 331. The registration does no more than preserve a lien which exists already. There was no error in overruling the motion for a new trial. The appellants allowed the witness to give his testimony without being sworn, and thereby waived any objections to it on that account."

In the Keating Case, supra, our Supreme Court, speaking through Judge Henry, referred to and quoted with approval, the language in the opinion in the Trammell Case which we have quoted above.

We recommend that the judgments of the Court of Civil Appeals and the district court, in so far as they award to the plaintiffs the 2,060 feet of 10-inch casing, be affirmed, but that in all other respects the judgments of both lower courts be reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both affirmed in part and in part reversed and remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.