**DENNY et al. v. WHITE HOUSE LUMBER CO. et al.**

**No. 5279.**

Court of Civil Appeals of Texas. Amarillo.

March 24, 1941.

Rehearing Denied April 28, 1941.

Will Crow, of Canadian, for appellants.

Hoover, Hoover & Cussen, of Canadian, and Sanders & Scott, of Amarillo, for appellees.

STOKES, Justice.

This suit was filed by appellees, White House Lumber Company and Gibson Supply Company, each being a corporation, and H. E. Hoover, against appellants, J. W. Denny and his brother, Charles Denny, Jr., to recover the title and possession of certain personal property. The suit was originally filed on September 26, 1927, and this is the fourth appeal to this court, opinions on the former appeals being reported in 40 S.W.2d 250, 75 S.W.2d 709, and 94 S.W.2d 241. A writ of error was granted by the Supreme Court in the first appeal and its opinion will be found in 54 S.W.2d 86. The pleadings were amended upon the last trial in which Mrs. Charles Denny, Jr., individually and as surviving community administratrix, was substituted as defendant in place of her husband who died in 1937.

In their first amended original petition, upon which the case was tried this time, appellees alleged that in September, 1927, they were the owners and in possession of a Standard drilling rig, 250 feet of 15½″ oil well casing, 640 feet of 12½″ oil well casing, three joints of 12½″ oil well casing, one 250 barrel steel storage tank, and one 250 barrel wooden storage tank, of the alleged aggregate value of $1,030, and that, on or about the date mentioned, J. W. Denny and Charles Denny, Jr., wrongfully took possession of such property and had continuously withheld the same from appellees, to their damage in a sum equal to the value thereof. Appellees prayed for judgment for the title and possession of the property and in the alternative for a personal judgment in the event the property could not be restored to them.

Appellants answered by the general issue and specially pleaded that they were the owners of the personal property in controversy by virtue of foreclosure proceedings under a lien for labor performed by J. W. Denny and Charles Denny, Jr., under a contract with one S. R. McCorkle, which contract, they alleged, had been duly filed in the office of the county clerk of Ochiltree County, thus creating a laborer's lien under the provisions of Art. 5473, R.C.S.1925, which lien, they alleged, had been foreclosed in a former suit filed by them against McCorkle. They alleged that, under an order of sale issued upon their judgment against McCorkle, the property had been sold by the sheriff, purchased by J. W. Denny and Charles Denny, Jr., and, by bill of sale, conveyed to them by the sheriff as a result of such purchase and that they, therefore, were the owners of the property. They alleged that the appellees had wrongfully sued out a writ of sequestration in this case and caused the sheriff to dispossess them of the personal property and that the same had been removed to a place unknown to them or had deteriorated and could not now be located, and prayed that their title thereto be established and that they have judgment against appellees for the value thereof, which they alleged to be $6,500.

The record shows that on July 3, 1926, S. R. McCorkle and the Denny brothers entered into a written contract, by the terms of which the Denny brothers agreed to drill a well for McCorkle in an effort to produce oil or gas on Section 471, Block 43, H. & T. C. Ry. Co. Surveys, in Ochiltree County, upon which McCorkle held an oil and gas lease. The contract provided that the well should be drilled to a depth of 3,500 feet unless oil or gas was found at a lesser depth, and that McCorkle would furnish the derrick, fuel, water and casing necessary for the drilling of the same. The compensation to be paid the drillers was $5.50 per foot and $50 per day for "shutdown time" occasioned by lack of material or other causes for which McCorkle may be responsible. When the well reached a depth

of 1,580 feet, the drillers stopped their work, presumably because McCorkle had not paid them for their services as provided by the contract, and on November 2, 1926, the Denny brothers filed the contract in the office of the county clerk of Ochiltree County. Before they did so, however, McCorkle sold and, by bill of sale, transferred and delivered all of the property, including the derrick, the oil well casing and tanks to appellees, White House Lumber Company and Gibson Supply Company. The Denny brothers thereafter filed suit against McCorkle for a balance which they claimed was due them for labor and services performed under the drilling contract and to foreclose the laborer's lien which they alleged was created and perfected by the filing of the contract in the office of the county clerk. They originally made appellees parties to that suit, but before the same was called for trial appellees were dismissed and a judgment by default taken by the plaintiffs against McCorkle for the amount sued for, together with a foreclosure of their alleged laborer's lien. An order of sale was duly issued upon the judgment and the property here involved sold by the sheriff and the Denny brothers became the purchasers at such sale.

In the instant suit appellants are claiming title to the property, contending they became the owners thereof under their purchase at the sheriff's sale and the bill of sale issued to them by the sheriff, and appellees are contending that they procured title thereto under the bill of sale executed to them by McCorkle. When the instant suit was originally filed in 1926, appellees, as plaintiffs, sued out a writ of sequestration under which the sheriff took possession of the property but by reason of its ponderous and immobile nature, it was permitted to remain upon the site of the lease, and the record indicates that during the years intervening since it was levied upon under the writ of sequestration it has deteriorated and been removed so that the property itself is not now available to either appellants or appellees. Each party, therefore, in the alternative, sued the other for its value.

This succinct statement of the case is sufficient, we think, as a basis for a discussion of the issues involved in this appeal. A more extended statement of the facts is given in connection with the opinion of this court on the first appeal which is reported in 40 S.W.2d 250.

A jury was impaneled to try the case, but at the close of the testimony, upon motion of appellees, the court instructed the jury to return a verdict in favor of appellees and upon the return of such verdict by the jury, the court entered judgment, decreeing the title and possession of the personal property involved to appellees and denying appellants any recovery upon their cross-action. Appellants duly excepted to the judgment, gave notice of appeal, and have perfected an appeal to this court.

A number of assignments of error and propositions are presented in the brief, but the controlling issue is raised by the first assignment of error in which they contend that the court erred in instructing the jury to return a verdict in favor of appellees, vesting the title to the property in them because the uncontroverted evidence showed that appellants own and hold title to the property in controversy which is paramount and superior to the title claimed by appellees.

■ The evidence pertaining to this controlling issue is without conflict and the court was required under the rules of practice in our courts to give a peremptory instruction in favor of one or the other of the parties. Appellants claim title to the property by virtue of what they alleged to be a valid and subsisting laborer's lien perfected by them when they filed their drilling contract with McCorkle in the office of the county clerk of Ochiltree County under the provisions of Arts. 5453, 5473 and 5476, R.C.S.1925. The record shows that the contract was filed a few days prior to the expiration of four months after the indebtedness had accrued and such filing was sufficient to create and preserve the lien claimed by appellants upon such property as may be thus encumbered under the provisions of Art. 5473. That appellants took the proper steps to create and preserve a lien cannot be further questioned. That question was settled by the Supreme Court in the opinion written by Judge Critz when this case was before that court. Denny v. White House Lumber Co., Tex.Com.App., 54 S.W.2d 86. It is true that McCorkle executed and delivered to appellees the bill of sale and conveyed the property to them prior to the filing by appellants of the drilling contract, but, as held by the Supreme Court, its filing within the time provided by law related back to the time when the work was performed and, therefore, so far as notice is concerned, it took prece-

dence over the rights and interests procured by appellees under their bill of sale from McCorkle, regardless of whether appellees had actual or other constructive notice of it or not. If appellants have title to the property in controversy it is by virtue of the provisions of Art. 5473, R.C.S. While it is true that their claim of title is supported by a bill of sale executed by the sheriff of Ochiltree County to appellants when they became the purchasers at the foreclosure sale, yet if appellants did not have a lien on the property, the judgment of the court foreclosing an alleged lien and their purchase under such foreclosure would avail them nothing as against appellees who held a bill of sale from the owner of the property because appellees were not parties to that foreclosure. Indeed, it was held by the Supreme Court, and by this court on the second appeal (75 S.W.2d 709), that appellees were in no manner bound by that proceeding because they had been dismissed from the case before the judgment was rendered. We are, therefore, relegated to the provisions of the statute (Art. 5473) to ascertain whether or not appellants have title to the property and also for a basis upon which to adjudicate the merits of the assignment of error under discussion. Stripped of the words contained in the statute which do not pertain to the lien given to laborers, such as appellants, and using only the words thereof which pertain to the controversy between the parties in this case, that is, to the lien given to laborers, its provisions are reduced to the following: Any laborer, who shall, under contract, express or implied, with the owner of any gas, oil or mineral leasehold estate in land, perform labor in drilling any oil or gas well, shall have a lien on the whole of such land or leasehold interest therein or lease for oil and gas purposes, the buildings and appurtenances, and upon said oil well for which the same are furnished and upon all of the other oil wells, buildings and appurtenances, including pipe line, leasehold interest, and land used in operating for oil, gas and other minerals upon such leasehold or land for which said labor (is) performed.

Following the holdings of our courts in an imposing number of cases which we shall presently cite, in which the article of the statute here involved has been analyzed, we interpret its language as creating a lien only upon the property specifically mentioned in it which is the land or leasehold interest, buildings and appurtenances, the oil or gas well upon which the labor is performed, and other oil and gas wells, pipe lines, and land used in operating for oil, gas and other minerals upon the leasehold or land upon which the labor is performed. None of these things includes any of the property involved in the present suit. It is not claimed by appellants that they furnished any of the material or property upon which they claim a lien and their lien is asserted only by virtue of Art. 5473, the article of our statute which pertains to labor performed in the drilling of oil wells and operations for the development of oil, gas and other minerals. No claim is made that any of such property was made or repaired by appellants and, therefore, the lien given by Art. 16, Sec. 37, of the Constitution, Vernon's Ann.St., to mechanics, artisans and materialmen is not involved. Moreover, it is not claimed that any of the property or material upon which they assert a lien was furnished by them, but only that they performed labor under the drilling contract for McCorkle who owned the leasehold estate and the personal property here involved. They are governed entirely, therefore, by the provisions of Art. 5473, which give a lien to laborers, as distinguished from materialmen, and in our opinion they did not have any statutory laborer's lien on the property as contended for by them. Williams v. Magouirk, Tex.Civ.App., 235 S.W. 640; McClellan v. Haley, Tex. Civ.App., 237 S.W. 627; Id., Tex.Com.App., 250 S.W. 413; Security Banking & Inv. Co. v. Flanagan, Tex.Com.App., 254 S.W. 761; Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052; Longhart Supply Co. v. Keystone Pipe & Supply Co., Tex. Civ.App., 26 S.W.2d 389; Woods v. Lanier, Tex.Civ.App., 66 S.W.2d 360; Lee C. Moore & Co. v. Jarecki Mfg. Co., Tex.Civ. App., 82 S.W.2d 1002.

The case of Williams v. Magouirk, supra, involved an alleged laborer's lien upon property almost identical with that involved in this case. Magouirk brought suit against the appellants to recover $890 and to foreclose an alleged laborer's lien upon a derrick, tool engine, pumps, certain oil well casing and other articles owned by the defendants and used by Magouirk in the drilling of an oil well. In applying the provisions of Art. 5473 (then Art. 5639a) of the statute, Justice Vaughan, in delivering the opinion of the Court of Civil Appeals of

the Fifth District, said [235 S.W. 642]: "However, as we interpret the language of the section above referred to, the lien created by same does not extend to and include the property described in appellee's petition as above set out, as the act under discussion only extends the lien therein provided for as to material, machinery, or supplies * * * furnished by the laborer or mechanic and used in the digging, drilling * * * or repairing any such oil or gas well. It is neither alleged nor proved that any of the material, machinery, or supplies described in appellee's petition were furnished by appellee, and were used in the digging or repairing an oil or gas well owned by appellants, or that the same were so furnished for the purpose of being so used. We cannot by implication or by an interpretation not authorized by the plain language of the act extend the provisions of same beyond that which it is apparent the Legislature alone intended same to apply."

■ The only theory under which it could with any legal logic be asserted that the statute extends the lien to property of the nature of that which is here involved would be that, at least some of it was an appurtenance to the leasehold estate or the well. This contention was made by the appellee in the Williams case, supra, and the court held that the material, machinery and supplies described in the petition, which included a derrick and casing, did not constitute appurtenances within the meaning of the law. A like holding by the Supreme Court will be found in Wagner Supply Co. v. Bateman, supra, and other cases above cited. In view of these holdings of our courts and the plain provisions of the statute itself, we must conclude that appellants did not have a lien on any of the property described in their petition and they were, therefore, not entitled to recover.

Appellants contend that the question of whether or not they have a valid lien upon the property as claimed by them has been foreclosed in their favor and against appellees by former decisions in this case, particularly the decisions as revealed by the opinion of the Supreme Court (54 S.W. 2d 86) and the opinion of this court upon the second appeal. 75 S.W.2d 709. We do not have before us the pleadings and statements of fact shown by the records on the former appeals, but from the statements of the case made by the courts on all of the former appeals it is clear that the question involved upon this appeal has never before been presented to nor passed upon by any court in this case. It is true that Justice Martin, in delivering the opinion of this court on the second appeal (75 S.W.2d 709), said: "The Supreme Court Commission expressly decided, 54 S.W.2d 86, that appellees' written contract for the drilling of an oil well, timely filed, gave to them a superior lien upon the property in controversy. We will not reopen and again discuss questions raised by appellants which were foreclosed against them by the above opinion. Appellants now apparently overlook the fact that the opinion, supra, expressly decided that appellees' lien was properly fixed under the statute and operated as a superior lien from the date of their contract and that the possession of said property by appellants postdated the said contract."

■ In relation to the issues and contentions then before the Supreme Court, the statement of Justice Martin is undoubtedly correct, but the case as presented to this court on the first appeal in which the writ of error was granted by the Supreme Court, and as presented to the Supreme Court, involved only the question of whether or not appellants had pursued the proper steps to perfect and preserve the laborer's lien provided by Art. 5473, R.C.S. It was not contended on that appeal nor on any of the former appeals of this case, that the statute does not give a lien upon property such as that involved in this litigation. The opinions all indicate that the parties to the appeals and the courts, in passing upon the questions presented, assumed that, if the lien was properly fixed and preserved by the steps taken by appellants, the lien attached to the property. Judge Critz, in delivering the opinion for the Supreme Court, did foreclose the question being discussed by him, as stated by Justice Martin, but the question was whether or not appellants had taken the steps required by the law to perfect and preserve such a lien as is provided for by Art. 5473 of the statute. In other words, it was the procedure, and not the substantive law pertaining to the lien that was then before the court. A large portion of the opinion of the Supreme Court is devoted to a discussion of Arts. 5476, Chap. 3, and 5453, Chap. 2, of Title 90, R.C.S., 1925. Those articles provide the procedure that shall be followed and the steps that must be taken by the

'laborer, mechanic or materialman, in order to fix and preserve the lien provided by Art. 5473. The question of whether or not appellants had pursued the method and observed the procedure laid down by the law in attempting to fix and preserve their lien was the only issue before the court, as far as the opinion shows, and this was the only question that was decided by the Supreme Court, as a close reading of its opinion will show. We, therefore, do not agree with appellants in their contention that the question now before us on the present appeal, that is, whether or not the personal property here involved is subject to the lien claimed by them, has been foreclosed by the Supreme Court or any other court on former appeals of this case. Decisions of the courts must be interpreted in light of the issues before them and with which they are concerned when their decisions are made and their opinions written. Fulton v. Robinson, 55 Tex. 401; Latham v. Kistler, Tex.Civ. App., 235 S.W. 938; Benson v. Adams, Tex.Com.App., 285 S.W. 818; Community Natural Gas Co. v. Northern Texas Utilities Co., Tex.Civ.App., 13 S.W.2d 184.

What we have said demonstrates, we think, that appellants never acquired, nor under the circumstances revealed by the record could they have acquired, the laborer's lien provided by Art. 5473, R.C.S., upon the property involved in this case. Appellees were not bound by the judgment foreclosing the alleged lien of appellants which was rendered in the foreclosure suit which appellants filed against McCorkle, because, while they were originally made parties to that suit, they were dismissed before the judgment was rendered. Appellees hold title to the property by virtue of the bill of sale executed and delivered to them by McCorkle who was then the owner of the property free and clear of any liens or encumbrances of appellants. The title to the property was thereby conveyed to appellees and the court below did not err in giving to the jury a peremptory instruction to return a verdict in favor of appellees nor in rendering judgment according to such verdict.

A number of other assignments of error are presented, but as we have stated, the case must stand or fall upon the issue which we have discussed and it is not necessary, therefore, to notice the other assignments of error.

The judgment of the court below will be affirmed.