**FLATTE**

v.

**KOSSMAN BUICK CO.**

No. 6712.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 28, 1954.

Rehearing Denied March 4, 1954.

Sid Lee, John D. Raffaelli, Texarkana, for appellant.

Brown & Brown, Texarkana, for appellee.

HALL, Chief Justice.

This is a suit for conversion of a Buick automobile by appellee against appellant in the District Court of Bowie County. Trial was to a jury on special issues, and upon the answers to said issues judgment was entered for appellee for the sum of $3,234.07, which the court, in response to supplemental motion of appellant, reduced to $2,750.

Appellant's first five points relate to the overruling of five exceptions he leveled at appellee's original petition. His contentions are: (a) That the petition did not allege that appellant had possession of the automobile at the time appellee demanded its return; (b) it was not alleged in said petition how appellant came into possession of the automobile; (c) it was not alleged in what manner, when and from whom, appellant obtained possession of the automobile; (d) it was not alleged in the petition "the circumstance, time and place and the occasion upon which appellee was deprived of or parted with possession of the described automobile"; and (e) it was not alleged in the petition what persons obtained possession of the described automobile from appellee. Omitting the formal parts, appellee's petition is as follows: "Plaintiff alleges that on and prior to the 5th day of December, 1951, that plaintiff was, and still is, the owner of a Buick 1951/56R Model New Automobile, Serial No. 66403437, Motor No. 66160965, of the value of Three Thousand Two Hundred Thirty-four & .07/100 ($3,234.07) Dollars, and that on or about the ——— day of December, 1951 or the ——— day of January, 1952, the defendant without the knowledge or consent of this plaintiff took possession of said car and has converted said automobile to his own use and profit and has not paid this plaintiff any consideration for the same and still holds said automobile or has sold and retained consideration for said car.

"Plaintiff would further show to the court that he has demanded the return of said automobile or the payment of the value thereof, which the defendant has refused to do, and still fails and refuses to so do." The pleading of appellee is not as full and concise as it should be, but, in our opinion, the allegations contained in appellant's answer are sufficient to supply the deficiency, if any, in appellee's petition. The trial court and this court may look to appellant's answer to supply any deficiency in appellee's petition. Davies v. Texas Employers' Ins. Ass'n, Tex.Com.App., 16

S.W.2d 524; Lennox **v.** Texas Farm Bureau Cotton Ass'n, Tex.Civ.App., 16 S.W.2d 413, wr. ref.; 42 T.J., p. 551, sec. 38, and authorities cited to support the text; 71 C.J.S., Pleading, § 590, sub-secs. a and b, p. 1169. These points are overruled.

By points 6 to 16 inclusive, appellant contends that the answers to special issues Nos. 1, 3 and 7 are unsupported by the evidence. The jury's answer to special issue No. 1 was that at the time plaintiff (appellee) delivered the automobile to Pat Murphy the said Pat Murphy was not engaged in the buying and selling of automobiles as a new and used-car dealer. The answer to special issue No. 3 was that at the time the plaintiff delivered the Buick automobile to Pat Murphy it was not Murphy's intention, or probable intention to resell same. The answer to special issue No. 7 was that at the time plaintiff delivered said automobile to Pat Murphy he did not intend to part with title to said automobile before Pat Murphy's check was paid.

The facts are that on December 5, 1951, Pat Murphy purchased from appellee in Cleveland, Mississippi, one Buick automobile for which he gave to appellee his check in the sum of $3,234.07. This check was not paid by the bank in another city, upon which it was drawn, when presented and has never been paid. Murphy had appellee put $674 worth of optional equipment and accessories on the car. Appellee testified that Murphy told him that he was buying this car for his personal use. At the time of the purchase of the car appellee, Kossman Buick Company, delivered to Murphy a car invoice which gave the make, model, serial number, engine and key numbers of the automobile, which car invoice also contained the following:

| "Insurance Coverage Includes | (This column starts beside 'Key No.') | |
| --- | --- | --- |
| Fire and theft | Price of car | $2147.19 |
| Collision—Amount deductible | Transportation Chge. | 136.00 |
| Public Liability—Amount | E.O.H. | 174.00 |
| Property damage—Amount | Sales tax xxxx Del. & Hd. | 38.50 |
| | Delivered price | 2495.69" |

The invoice also listed each article of optional equipment placed on the car by appellee at the request of Murphy, amounting to ....................

| | |
| --- | --- |
| | 674.97 |
| Sales tax .................. | 63.41 |
| | $3234.07 |

Murphy drove the car from Cleveland, Mississippi, to Little Rock, Arkansas, and phoned appellant with respect to selling him the car. Murphy immediately came to Texarkana and on the 6th or 7th of December, 1951, sold the car to appellant for $2,550 cash. Shortly after appellant's purchase of the car he sold it to another party for $2,750. Pat Murphy is not a party to this suit nor did he testify. Appellee R. B. Kossman, President of Kossman Buick Company, testified that he had contacted Murphy on several occasions since the sale of the Buick automobile requesting payment for the car. Murphy always promised to pay him. The last time he saw Murphy was some time early in 1952. Murphy has never paid Kossman for the car. It was several weeks after appellant purchased the car from Murphy before appellee learned that appellant had bought the car. This suit was filed on February 20, 1952.

In response to a motion filed by appellant, the trial court took judicial knowledge of certain laws of the state of Mississippi and holdings of its Supreme Court. So much of said statutes and holdings as are

material to this opinion will be set out further in the opinion.

At the time of the sale of the automobile to Murphy appellee delivered to him in addition to the invoice, an Owners Service Policy, showing Pat Murphy as owner, address, Cleveland, Mississippi, giving serial number of the car, engine number and date of delivery. This policy was issued by Kossman Buick Company, Cleveland, Mississippi. At the same time appellee delivered to Murphy Buick Owners Delco Battery Warranty and Adjustment Policy, which also designated Pat Murphy as owner with his address at Cleveland, Mississippi, giving the year and model of the car, date purchased and showing that said warranty and service policy was issued by appellee at Cleveland, Mississippi. These papers were left in the car by Murphy at the time of the sale of the automobile by him to appellant.

■ Appellant asserts that the evidence is insufficient to sustain the answers of the jury set out above to issues Nos. 1, 3 and 7. The answer to issue No. 7 raises the most serious question presented on this appeal. Appellee admits that he made no express specific agreement nor was there any understanding between him and Pat Murphy that appellee was to retain title of the automobile until the check given by Murphy in payment for same had been honored. As set out above Kossman testified that Murphy told him that the car was for his personal use, and he had Kossman place over six hundred dollars worth of extras on the car. Kossman as owner of the car had the right to reserve the title until the check was honored. Murphy knew when he gave the check that it would not be paid even though he told Kossman it would be. The trial court, at the request of appellant, as heretofore pointed out, took judicial notice that "There is no Mississippi statute or other Mississippi rule of law, which requires a conditional vendor in Mississippi to record his conditional sales contract in order to give it validity against a bona fide purchaser for value without notice in Mississippi." In the case

Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843, 846, it is said: "The bill of sale from Cherokee Motors, Inc., to Harris covering the motor vehicle was executed in Decatur, DeKalb County, Georgia, and gives Harris' address as 1132 Peachtree Street, Atlanta, Georgia. Harris executed the chattel mortgage to petitioner in the county of his designated address. There was nothing to prevent Fretz or anyone else from seeing Harris' address which was typewritten on the bill of sale."

■ It is clear from the above authority that a duty rested upon appellant, purchasing this out-of-state car, to use diligence to determine whether or not a lien of some sort had been retained in the state of Mississippi, or whether the sale to Murphy was an out-right one or conditional in its character. There is no testimony that appellant made any inquiry with respect to the actual ownership of the car at the time he purchased it from Murphy. The car itself revealed the large number of accessories that had been placed on it by appellee at the time Murphy sold it to appellant for $2,550. Appellant testified the price of the car without the accessories was about $2,500. Appellant also testified that Murphy gave him a bill of sale to the car at the time he purchased it; that the car had been registered in Mississippi and that Murphy gave him the Mississippi registration certificate. Furthermore, on the face of the car service policy and the Delco Battery Policy was the date of the purchase of the car from Kossman in Cleveland, Mississippi. Appellant, a dealer in new and used cars, certainly knew that the new Buick purchased by him from Murphy containing a large number of accessories affixed to it was worth much more than $2,550, the price he paid, not over two days after Murphy had purchased it. In fact appellant sold the car in about two weeks for $2,750. The invoice given by Kossman to Murphy in Mississippi at the time of the original sale, which appellant claimed he did not see until Kossman telephoned him about the car, shows the date of the sale, and the purchase price of $3,234.07 paid by Murphy; that the pur-

chase price was paid by check; and Kossman's address. Had appellant expended a nominal fee for a telephone call he would have learned that the purchase price for the car had never been paid and that the title had not passed to Murphy.

■ Appellant cites the case of Gerber v. Pike, Tex.Civ.App., 249 S.W.2d 90, by this court, as authority for his contention that the title had passed to Murphy. That case differs from the case at bar in two very material respects—Gerber delivered four new trucks in Chicago to the Arkadelphia Motor Company and took checks in payment of same which were dishonored upon presentation at the Arkadelphia bank. It was the claim of Gerber that title did not pass and that therefore all later sales by the Arkadelphia Motor Company would not be protected under the doctrine of innocent purchaser. In that case Gerber permitted the Arkadelphia Motor Company to take the cars from Chicago, Illinois, to Arkadelphia. Gerber knew Arkadelphia Motor Company was a new and used-car dealer, and knew that it was buying the cars for re-sale. An issue of fact developed as to whether the title passed in Chicago, or whether the sale was conditional on the payment of the checks. The other point of difference is that the trial court found upon conflicting evidence that the title to the trucks had passed from Gerber to the Motor Company and that Pike was an innocent purchaser from the Arkadelphia Motor Company. There is nothing in this record to indicate that appellee had any knowledge or suspicion that Murphy was going to sell the automobile. As stated above Murphy told him he was buying the car for his personal use. The fact that on several occasions appellee tried to get Murphy to pay him for the car, we do not think, should militate against him. Appellant has cited other cases which we have read and studied but we think that in point of fact they are not controlling here. " 'The weight of the authority is to the effect that a mortgage, properly executed and recorded according to the law of the state where the mortgage is executed and the property is located will, *if valid there,* be held valid even as against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor, unless the transaction contravenes the statute or settled law or policy of the forum.' " (Italics ours). Bank of Atlanta v. Fretz, supra, quoting with approval 14 C.J.S., Chattel Mortgages, § 15, p. 607. This same authority states further: "Stumberg, in his Conflict of Laws, page 366, says: 'A majority of the courts feel that preference should be given the conditional vendor or mortgagee when the chattel is wrongfully removed from the state where it was originally sold and the law there has been complied with, because they think that it is better social policy to protect him against a person, who, although he is innocent, is claiming title through a wrongdoer whose wrongful act is beyond the effective control of the vendor or mortgagee.' " We do not think such rule contravenes any statute or settled law or policy of this state. It must be remembered that the laws of Mississippi make binding an oral lien, which, of course, cannot be recorded. And it must be remembered further that the laws and decisions of Mississippi were upon motion of appellant brought into this case.

■ In addition to what we have said next above it is our opinion that regardless of the question of notice on the part of appellant with respect to the circumstances surrounding the sale of the automobile by appellee to Murphy in Mississippi, he would still be liable to appellee for the automobile, or the value thereof. The sale of the automobile to Murphy was a cash transaction in which Murphy gave his worthless check in full payment therefor. In such circumstances no title passed from appellee to Murphy. This is clearly the holding of our Supreme Court in Denny v. Whitehouse Lumber Co., Tex. Com.App., 54 S.W.2d 86, 87, wherein it is said: "As already shown, the Gibson Supply Company sold this casing to McCorkle as a cash transaction. McCorkle

gave his check therefor at the time it was purchased by and delivered to him. The check was worthless and never paid. Under such a record the title to this casing remained in the vendor, Gibson Supply Company, and never passed to McCorkle. Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527. This being the case, no lien could attach thereto in favor of defendants on a claim against McCorkle." In Menke v. First Nat. Bank of Amarillo, Tex.Civ.App., 206 S.W. 693, 695, wr. ref., it is said: "As we understand the rule, where the terms are cash on delivery, if such was the contract, the concurrent payment upon delivery was essential to pass title, and if there was nothing in the transaction which would create an equitable estoppel against the vendor, he may take the property in the hands of an innocent sub vendee for value", citing cases. See also Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527; Malone v. Dawson, 117 Tex. 377, 5 S.W.2d 965, 60 A.L.R. 665; Nicewarner v. Alston, Tex.Civ.App., 228 S.W.2d 872, wr. ref., n. r. e.; Parma v. First Nat. Bank of Cameron, Tex.Com. App., 63 S.W.2d 692. The record in our opinion is sufficient to support the answers of the jury to issues No. 1, No. 3 and No. 7. These points are overruled.

■ Appellant complained of the action of the trial court in disregarding the finding of the jury in answer to special issue No. 6 to the effect that appellant was an innocent purchaser for value, without notice. This contention is not made a point in appellant's motion for new trial in the court below, and under Rule 320(c), of the Texas Rules of Civil Procedure, and the case of Ralston v. Toomey, Tex.Civ. App., 246 S.W.2d 308, wr. ref., n. r. e., it cannot be considered.

We have examined all other points brought forward on this appeal and have concluded that they are without merit and are respectfully overruled.

In our opinion the judgment of the trial court should be affirmed, and it is so ordered.