In re MEG PETROLEUM CORPORA-
TION, *Arroyo Drilling, a Partnership
and Canyon Supply and Leasing, a
Partnership*, Debtors.

MEG PETROLEUM CORPORATION, Ar-
royo Drilling, a Partnership and Can-
yon Supply and Leasing, a Partnership,

v.

HALLIBURTON SERVICES, et al.

MEG PETROLEUM CORPORATION:
Arroyo Drilling, a Partnership and
Canyon Supply and Leasing, a Partner-
ship,

v.

AWS WELL SERVICING COMPANY
a/k/a American Well Servicing Co.

Bankruptcy No. 483–00769.
Adv. Nos. 485–4133, 485–4134.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

Jan. 29, 1986.

J. Michael Sutherland, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for debtor.

Susan F. Austin, Kemp, Smith, Duncan & Hammond, Midland, Tex., for Federal Deposit Ins. Corp.

Robert W. Jones, Thompson & Knight, Dallas, Tex., for Halliburton Services.

Charles M. Cobb, Dallas, Tex., for American Well Servicing Co.

## MEMORANDUM OF DECISION

MICHAEL A. McCONNELL, Bankruptcy Judge.

The Debtors filed the instant Adversary Proceedings on May 31, 1985 in order to determine the secured status and priority of statutory liens filed by the respective Defendants against certain of the Debtors' oil and gas leases. On August 26, 1985, the Court entered an order pursuant to Bankruptcy Rule 7024 which allowed the Federal Deposit Insurance Corporation, (the "FDIC"), in its corporate capacity as liquidator of the First National Bank of Midland, Midland, Texas, to intervene in Adversary Proceeding No. 485–4134 on grounds that the FDIC's ability to protect its asserted interest in the oil leases might be impaired by a disposition of the action in its absence.

The Court entered Interlocutory Default Judgments and Related Orders on October 21, 1985 which released all of the statutory liens asserted against the Debtor's leases, including the Lopez Creek lease, by Curtis Drilling Company, the Epley Corporation, d/b/a Oil Well Machine and Tool Company, West Texas Utilities Company, Dolan's Roustabout Service and LTV Energy Products Company. LTV, however, did not release its lien on the South Pfluger lease.

The Court conducted a consolidated trial of both Adversary Proceedings on December 18, 1985. This Memorandum Opinion constitutes its Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## FACTUAL BACKGROUND

From the stipulations of the parties, the Court finds the undisputed facts as follows. The consolidated Debtors filed their voluntary Chapter 11 Petitions on September 13, 1983, September 7, 1983 and September 16, 1983 respectively. They subsequently retained control of their operations as Debtors-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. On February 8, 1985, the Court entered an order confirming the Debtors' Consolidated Plan of Reorganization.

Section 4.05 of the Plan of Reorganization provides that the priority of all mechanic's and materialmen's liens asserted against the Debtors' oil and gas leases will be determined following confirmation and that allowed mechanic's and materialmen's liens will constitute secured Class Five claims only to the extent of the Debtors' net unencumbered interest, ("Available Value"), in the oil and gas leases subject thereto. The Plan further provides that allowed, secured mechanic's and materialmen's liens will be paid from the dedication of 100% of the Net Production Income, (gross revenues less royalties, taxes, operating costs and other charges), attributable to the subject lease "until such liens are paid in full or until the subject property

becomes noncommercial or is plugged, abandoned, forfeited or otherwise lost for purposes of obtaining net production income."

Prior to the time the Debtors filed their voluntary Chapter 11 petitions, they owned working interests in, *inter alia*, the Lopez Creek, University "54", Halfmann and Lexia N. Aiken oil and gas leases. The Lopez Creek and the Lexia N. Aiken Leases are located in Irion County, Texas, while the Halfmann and University "54" leases are located in Glasscock and Schleicher County, Texas respectively.

On February 19, 1982, May 27, 1982, and August 1, 1982, the Debtors obtained three separate loans from the First National Bank of Midland, Texas ("the Bank") in the aggregate principal amount of $10,627,-679.61. These loans were evidenced by three separate promissory notes, the first of which was due and payable on or before August 18, 1982. The latter two notes were due and payable on or before November 23, 1982.

In order to secure their obligations under the three loans, the Debtors granted a lien to the Bank in each of the four oil and gas leases. These liens were evidenced by four separate Deeds of Trust which were admitted into evidence at trial as AWS Exhibits No. 2-A through C. The Bank perfected the liens by filing the Deeds of Trust in the proper County Clerk's office on the following dates: Lopez Creek, Irion County—09/16/82; Halfmann Lease, Glasscock County,—09/14/82; University "54",

Schleicher County—10/26/82; Lexia N. Aiken, Irion County—10/27/82.[1]

Before the FDIC perfected its security interests in these four oil and gas leases, however, the Debtors entered into an oral contract with the Defendants, American Well Service Company, ("AWS") and Halliburton Services, ("Halliburton") to provide oil well drilling and completion services on many of the Debtors' oil and gas leases. Specifically, AWS furnished labor and materials, including, tubing tongs, swabsticks, and oil saver rubbers, for the completing, maintaining and operating of the wells on eleven of the Debtors leases located in Irion, Glasscock, Schleicher, Bernard and Coke Counties, including the four leases which were subject to the Bank's Deeds of Trust. AWS commenced providing these materials and services to the Debtors' wells in May, 1982, and it completed its work with respect to each well no later than six months after it started.[2] To date, the Debtors have not tendered payment for the materials and services which AWS provided to the Debtors' leases.

Similarly, Halliburton extended an open line of credit to the Debtors to provide services and materials on an as-needed basis for the perforating, stimulating, logging, and cementing of several wells located on the Lopez Creek lease. Halliburton provided these materials and services as required by the Debtor during the period from May 6, 1982 until January 27, 1983. No more than six months elapsed between

---

1. Following the failure of the First National Bank of Midland, the Federal Deposit Insurance Corporation, in its corporate capacity as the liquidator of the Bank, assumed both the Debtors' loans and the four Deeds of Trust securing them.

2. AWS provided services and materials for the following wells between the dates indicated.

| LEASE NAME | COUNTY | BEGINNING DATE | COMPLETION DATE |
|---|---|---|---|
| Lopez Creek | Irion | 06/07/82 | 11/06/82 |
| Pfluger Ranch | Menard | 06/01/82 | 06/02/82 |
| University "54" | Schleicher | 05/28/82 | 06/19/82 |
| Myra Tankersly | Irion | 07/26/82 | 07/29/82 |
| Halfmann | Glasscock | 07/20/82 | 10/07/82 |
| University "53" | Schleicher | 05/14/82 | 05/15/82 |
| Rock Pen | Irion | 10/07/82 | 10/27/82 |
| Lexia N. Aiken | Irion | 06/10/82 | 06/16/82 |
| Noelke | Irion | 06/02/82 | 06/07/82 |
| Sugg-Farmer | Irion | 05/12/82 | 07/29/82 |
| McLaughlin | Coke | 05/25/82 | 06/01/82 |

the first date that Halliburton furnished materials and services to the Lopez Creek lease and the date it completed its work thereon.[3]

When payment for the services was not timely made, both AWS and Halliburton sought to secure the Debtors' obligations under the well servicing contracts by filing Texas statutory mechanic's and materialmen's liens on the leases for which they had furnished materials and services. In order to do so, AWS, by David W. Rucker, its Controller and Agent, executed lien affidavits describing the eleven leases which were subject to the well servicing contract on or about December 29, 1982. AWS filed these Affidavits in the appropriate County Clerks' offices on or about January 3, 1983. Halliburton filed a lien affidavit describing the Lopez Creek lease on May 26, 1983 in the Irion County Clerk's office.

The mechanics and materialmen's liens which AWS asserts in the Halfmann, University "54", and Lexia N. Aiken leases are in conflict with the deed of trust liens claimed in the same three leases by the FDIC, whereas the mechanic's and materialmen's lien which it claims in the Lopez Creek lease is in conflict with both the Deed of Trust lien asserted by the FDIC and the M & M lien asserted by Halliburton. Both the Debtors and the FDIC claim that: (1) the Bank perfected its deed of trust liens in the University "54" and Lexia N. Aiken leases prior to the time AWS's mechanics and materialmen's liens became effective, and (2) that AWS failed to comply with the statutorily prescribed procedures for perfecting its mechanic's and materialmen's liens with respect to the Lopez Creek and Halfmann leases. As a result, the Debtors and the FDIC argue not only

that the FDIC's deed of trust liens in all four leases are superior to those claimed by AWS but also that the FDIC should be accorded priority in payout from the Net Production Income attributable to each lease. The Debtors and the FDIC additionally assert that AWS's mechanic's and materialmen's liens on the Lopez Creek are inferior to the competing mechanic's and materialmen's liens in the same property asserted by the Halliburton Company.

The initial question presented for determination by the Court is two-fold: first, whether AWS's holds valid mechanic's and materialmen's liens on the Lopez Creek, Halfmann, University "54", and Lexia N. Aiken leases; and, second, whether Halliburton holds a valid mechanic's and materialmen's lien on the Lopez Creek lease. The Court must then determine whether these mechanic's and materialmen's liens, if valid, have priority over the Deed of Trust liens which the FDIC asserts in the same properties. The Debtors further request the Court to find that the remaining leases on which AWS holds valid, uncontested mechanic's and materialmen's liens have either no "Available Value" (as defined by the Plan of Reorganization) or have proven themselves to be non-commercial and, hence, devoid of sufficient Net Production Revenue to pay secured claims.

## LEGAL ANALYSIS

### I. *The Application of Tex.Prop.Code Ann. § 56.001*

The Court finds that the express terms of Tex.Prop.Code Ann. § 56.001 *et seq.* (Vernon 1983) are dispositive of the dispute between the FDIC, AWS, and Halliburton

---

**3.** Halliburton performed work on the following wells on the Lopez Creek lease on the following dates:

| Well | Date |
|------|------|
| 7 | 5/6/82 |
| 6 | 5/8/82 |
| 8 | 5/11/82 |
| 8 | 5/13/82 |
| 5 | 5/15/82 |
| 5 | 5/19/82 |
| 5 | 5/20/82 |

| Well | Date |
|------|------|
| 5 | 5/21/82 |
| 9 | 9/5/82 |
| 2 | 9/14/82 |
| 9 | 9/15/82 |
| 9 | 9/16/82 |
| 2 | 9/21/82 |
| 2 | 9/22/82 |
| 9 | 10/2/82 |
| 9 | 10/16/82 |
| 1 | 1/27/83 |

insofar as it relates to the relative priority of their liens on the four subject oil and gas leases.[4] Subchapter 56 of the newly revised Tex.Prop.Code was enacted to give "mineral contractors" a lien on an oil and gas leasehold and the wells and equipment located thereon in order to secure payment for materials and services which they furnish in connection with mineral activities on the tract. Tex.Prop.Code Ann. §§ 56.001-56.003. The mechanics and materialman's lien created by Subchapter 56, however, does not affect encumbrances that have attached to the land or leasehold prior to its inception. Tex.Prop.Code Ann. § 56.-004. In addition, a mechanic's and materialmen's lien is apparently effective only to the extent of "the property of the person under whose auspice's the labor or material is furnished." *Bethlehem Supply Corporation v. Wotola Royalty Corp.*, 140 Tex. 9, 165 S.W.2d 443, 445 (1945); *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230 (1963); *Ayco Development Corp. v. GTE*, 616 S.W.2d 184 (1981).

Section 56.005 provides that a mineral contractor's lien attaches to the leasehold when the indebtedness "accrues." "Accrual" is defined as follows:

(b) The indebtedness for material or services accrues on the date the material or services was last furnished. All material or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way are considered to be furnished under a single contract unless more than six months elapse between the dates the material or services are furnished.

As a result, the individual mechanic's and materialmen's liens which AWS and Halliburton assert with respect to the leases attached or "accrued" on the last day on which they furnished materials or services to a particular lease.

Furthermore, Section 56.021 delineates the procedure which a mineral contractor must follow in order to perfect a mechanic's and materialmen's lien on a mineral lease. It states:

(a) Not later than six months after the day the indebtedness accrues, a person claiming the lien must file an affidavit with the County Clerk of the county in which the property is located.

(b) Not later than the 10th day before the day the affidavit is filed, a mineral subcontractor claiming the lien must serve on the property owner written notice that the lien is claimed.

Thus, in order for AWS and Halliburton to have validly perfected their mechanic's and materialman's liens in the leases for which they provided materials and services, they must have filed lien affidavits with the County Clerk of the county where the leases are located, (*viz.* Irion, Glasscock, Schleicher Counties), within six months of the date on which their indebtedness accrued.[5]

## II. *The University "54" and Lexia N. Aiken Leases*

For purposes of evaluating the competing claims of the FDIC and AWS, the Court makes reference to the following chart which delineates the dates on which AWS commenced and terminated its work on the wells as well as the dates on which AWS and the FDIC perfected their respective liens in the leases by filing.

---

**4.** According to its Enactment Provision, the revised Texas Property Code "is intended as a recodification only, and no substantive change in the law is intended by this Act." Thus, while the transactions which are the subject of the present proceeding occurred prior to the effective date of the new Code, (January 1, 1984), the Court chooses to analyze the issues raised herein in terms of the current statute since it gives effect to prior statutory and case authority.

**5.** It is undisputed that the lien affidavits filed by AWS and Halliburton comply with the requirements stated in § 56.022 in that each contains the following: the name of the owner of the oil and gas leasehold or other interests to which it pertains; AWS's or Halliburton's name and mailing address as claimant; the dates upon which AWS or Halliburton provided materials and services with respect to the lease; a description of the leasehold interest involved; and invoices containing itemized statements of the amount which the debtors owe to AWS or Halliburton as a result of its furnishing materials and services to the lease.

| Lease/Well | County | FDIC D/T Filed | AWS Work Begun | AWS Work Complete | AWS Lien Filed |
|---|---|---|---|---|---|
| Lopez Creek | Irion | 09/16/82 | 06/07/82 | 11/06/82 | 01/03/83 |
| Halfmann | Glasscock | 09/14/82 | 07/20/82 | 10/07/82 | 01/03/83 |
| University "54" | Schleicher | 10/26/82 | 05/28/82 | 06/19/82 | 01/03/83 |
| Lexia N. Aiken | Irion | 10/27/82 | 06/10/82 | 06/16/82 | 01/03/83 |

Halliburton provided materials and services with respect to the Lopez Creek lease on a continual, as needed basis from May 6, 1982 until January 27, 1983. It filed its lien affidavit on the property on May 31, 1983.

It is apparent from this chart that AWS failed to perfect its mechanic's and materialmen's liens in the University "54" and Lexia N. Aiken leases within the six month period prescribed by Section 56.021. The Court finds, therefore, as a matter of fact and law, that AWS is an unsecured creditor with respect to the University "54" and Lexia N. Aiken leases and that the FDIC takes priority as to payments made from the Net Production attributable to both leases under the terms of the Plan of Reorganization.

### III. *The Lopez Creek and Halfmann Leases*

The validity and priority of the liens asserted by AWS, Halliburton and the FDIC with respect to the Lopez Creek and Halfmann leases, however, present a different picture. From the dates provided in the above chart, the Court finds that both AWS and Halliburton properly perfected their mechanic's and materialmen's liens in the two leases in that they filed their lien affidavits in the counties where the leases are located within the six month period prescribed by Tex.Prop.Code Ann. § 56.021.

Specifically, AWS completed its work on the Lopez Creek and Halfmann leases on November 16, 1982 and October 7, 1982 respectively, and it filed its lien affidavits on the two leases on January 3, 1983. Similarly, Halliburton ceased providing materials and services to the wells located on the Lopez Creek lease on January 27, 1983, and it filed its lien affidavit on the tract on May 31, 1982. The Court finds, therefore, AWS has valid mechanic's and materialmen's liens on both the Lopez Creek and Halfmann leases and that Halliburton has a valid mechanic's and materialmen's lien on the Lopez Creek lease.

But this finding offers little assistance in determining whether the AWS lien takes priority over the FDIC's Deeds of Trust lien. Tex.Prop.Code Ann. § 56.004 (Vernon 1983) does not contain a comprehensive priority scheme analogous to the one delineated in Tex.Bus. & Comm.Code Ann. § 9.312 (Vernon 1983). As observed above, it states that "[t]he lien does not affect an encumbrance that attached to land or leasehold before the liens inception," but it does not define "inception".

The FDIC asserts that AWS's mechanic's and materialmen's liens on the Lopez Creek and Halfmann leases only relate back to the date that AWS completed its work. In support of its position, the FDIC refers the Court to *Bancroft v. Welch*, 258 S.W.2d 406 (Tex.Civ.App.—Eastland 1953, no writ), in which a drilling company asserted a mechanic's and materialman's liens on the leasehold as a result of services which it performed pursuant to a drilling contract. The Court in *Bancroft* held that the driller's lien "related back to the date on which the work under the contract was completed." *Id.* at 408.

But in *Crutcher, Rolfs, Cummings v. Big Three Welding Corporation*, 224 S.W.2d 884 (Tex.Civ.App.—Galveston 1949); *rev'd on other grounds*, 149 Tex. 204, 229 S.W.2d 600 (1950), the Galveston Court of Civil Appeals held that under Tex. Rev.Civ.Stat.Ann. § 5473 *et seq.*, (the

predecessor of Subchapter 56), "it is well settled that [mineral] mechanic's and materialmen's liens relate back to the time when the work was performed or the material furnished." (citations omitted) *Id.* at 890. *Accord, Wagner Supply Company v. Bateman,* 118 Tex. 498, 18 S.W.2d 1052, 1059 (1929), in which the Texas Supreme Court held that a materialman's lien on an oil and gas lease "becomes effective when the goods were delivered." *See also, Trammell v. Mount,* 68 Tex. 210, 4 S.W. 377, 379 (1887); *Denny v. Whitehouse Lumber Company,* 54 S.W.2d 86, 86–89 (Comm.App.—Section A 1932, holding approved), 150 S.W.2d 296, 298–299 (Tex.Civ. App.—Amarillo 1941); 43 *TEX.JUR.* Oil and Gas, § 549 (1963). In *Denny,* the court held that a mineral mechanic's and materialman's lien "related back to the time the work was performed and, therefore, so far as notice is concerned, it took precedence over the rights and interests" [of all claims attaching to the property after that time.] *Id.*

Moreover, in a case interpreting the relative priorities of a mechanic's and materialmen's lien and a writ of garnishment under Texas law, the Fifth Circuit Court of Appeals stated:

> "In the case at bar, the materials furnished to Gould by Lucey were all delivered prior to July 7, 1965, when Youngstown caused a writ of garnishment to be issued against Texaco. Since it is not disputed that Lucey complied with the filing and notice requirements of Art. 5476a and 5476c, Lucey had a properly perfected lien which related back to a time prior to the issuance of Youngstown's writ of garnishment. As decided by the *Crutcher* case, such a lien is prior in time and superior in right to a writ of garnishment issued after the materials are delivered." *Youngstown Sheet and Tube Co. v. Lucy Product Co.,* 403 F.2d 135, 143 (5th Cir.1968).

■ Reading the priority provision contained in Section 56.004 in conjunction with both the single contract provision contained in § 56.005 and the foregoing case authority, the Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automically relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract.

■ The mechanic's and materialmen's liens which AWS perfected on the Lopez Creek and Aiken leases on January 3, 1983 relate back to the time that AWS first provided labor and materials on the properties—June 7, 1982 and July 20, 1982 respectively. Despite the fact that AWS's mechanic's and materialmen's liens did not attach, (i.e. the indebtedness did not "accrue"), until it completed working on the two leases on November 6, 1982 and October 7, 1982, its liens relate back to the first day AWS furnished materials and services to the tracts pursuant to the well servicing contract because it filed its lien affidavits within the six month period prescribed by § 56.021. Thus, AWS's mechanic's and materialmen's liens are prior in time and priority to the Deeds of Trust liens filed by the FDIC on September 16, 1982 and September 14, 1982.

Similarly, the Court finds that Halliburton's mechanic's and materialmen's lien on the Lopez Creek lease relates back to May 6, 1982, the date on which it first provided materials and services to Well 7. As a result, its mechanic's and materialmen's lien takes priority over the Deed of Trust lien which the FDIC filed on the property on September 16, 1982.[6]

---

6. The Court finds support for this interpretation of §§ 56.004 and 56.005 in Tex.Prop.Code Ann. § 53.124, which defines "inception" for purposes of non-mineral mechanic's and materialman's liens. It specifically provides that the time of the inception of the lien is the earliest of three events, one being the actual commencement of construction of improvements or the delivery of material to the land upon which the improvements are being made. It states in part: (a) For purposes of Section 53.123, the time of inception of a mechanic's lien is the earlier of:

## IV. The "Visibility" Standard as it Relates to Mineral Mechanic's and Materialmen's Liens

■ Contrary to the assertions of the Debtors and the FDIC, the Court does not find that Texas law requires that improvements made upon an oil and gas lease for purposes of a mechanic's and materialmen's lien must be "visible." While all of the materials and services which AWS and Halliburton were "down hole", and, therefore, invisible to potential creditors, neither the current statute nor its predecessor, Tex.Rev.Civ.Stat.Ann. Art. 5473 *et seq.,* contains a visibility standard analogous to that found in the general mechanic's and materialmen's lien statute, Tex.Prop.Code Ann. § 53.124(b). Had the Texas Legislature desired to incorporate such a standard in the mineral mechanic's and materialmen's lien statute, it could have done so when it promulgated revised Subchapter 56. Moreover, the Debtors and the FDIC have not referred the Court to nor has the Court found any case law in which the Texas courts have required mineral contractors to provide "visible" improvements to oil and gas leases in order for their mechanic's and materialmen's liens to be valid.

## V. Priority in Net Production Income Payments Attributable to the Lopez Creek and Halfmann Leases

■ AWS will receive priority relative to the FDIC in Net Production Income payments which are attributable to the Debtors' interest, ("Available Value") in the Lopez Creek and Halfmann leases under the confirmed Plan of Reorganization. But since holders of competing mechanic's and materialmen's liens have equal priority, AWS and Halliburton must share Net Pro-

duction Income payments attributable to the Lopez Creek lease on a pro rata basis. *Lane-Wells Company v. Continental EMSCO Company,* 397 S.W.2d 217 (1965).

In order to define more clearly the extent of the Debtors' interests in the various leases for purposes of determining not only the extent of AWS's and Halliburton's secured claims pursuant to 11 U.S.C. § 506, but also for the purpose of determing "Available Value" under the Plan, the Court incorporates the following stipulations of the parties as further Findings of Fact:

1. That Aiken Well No. 1 should be abandoned to other interest owners;

2. That the Debtors have no ownership interest in the Myra Tankersley Sugg-Farmer # 3, or University "53"–1 Wells neither of these wells is the subject of a priority dispute between the FDIC and AWS, however;

3. That the Noelke # 1 and Pfluger North # 1 have been plugged and abandoned and are not in dispute between the FDIC and AWS;

4. That the Halfmann well has negligible economic value and may be plugged or abandoned;

5. That the recovery by the Debtors upon the anticipated Rock Pen # 3 well will not be more than $500.00;

6. That the Lopez Creek contains appreciable economic value.

### CONCLUSION

In conclusion, the Court finds that since AWS failed to file its lien affidavits with respect to the University "54" and Lexia N. Aiken leases within six months of its having completed its work thereon, its mechan-

---

(1) commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used; or (2) recording of a written agreement, or if the agreement is oral, an affidavit stating that the lien claimant has entered into an agreement

with the owner or the owner's contractor or subcontractor, to construct all or part of any improvements or to perform labor, furnish material or provide specially fabricated material in connection with the construction ...
See, *University Savings and Loan Association v. Security Lumber,* 423 S.W.2d 287 (1967).

ic's and materialmen's liens on the tracts are unperfected as a matter of Texas law. Consequently, the Deeds of Trust filed by the FDIC entitle it to take priority as to the payments from Net Production Income attributable to both leases under the Plan of Reorganization.

However, the mechanic's and materialmen's liens which AWS asserts against the Lopez Creek and Halfmann leases relate back to the date on which it first provided material and services to wells located on the leases. As a result, its mechanic's and materialmen's liens are prior to the Deeds of Trust which the Bank filed thereon. Similarly, Halliburton's properly perfected mechanic's and materialmen's lien on the Lopez Creek lease takes priority over the Deed of Trust lien which the Bank filed against the tract. As a result, AWS will take priority over the FDIC as to Net Production Income payments attributable to the Halfmann lease under the Debtor's Consolidated Plan of Reorganization. AWS will receive such payments only to the extent of the Debtor's net unencumbered interest in the tract. In addition, AWS and Halliburton will share equal priority with respect to Net Production Income payments attributable to the Lopez Creek lease under the Debtor's Plan of Reorganization.

All parties are instructed to confer and submit a Judgment in conformity with the foregoing Findings of Fact and Conclusions of Law within ten (10) days from the date of this Memorandum of Decision.